No. 82,783

In the Matter of STEPHEN J. DENNIS, *Respondent*.

(991 P.2d 394)

Opinion filed October 29, 1999.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause, and was on the formal complaint for the petitioner.

*Stephen J. Dennis,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent Stephen J. Dennis of 7270 West 98th Terrace, Suite 220, Overland Park, an attorney admitted to the practice of law in the state of Kansas.

Dennis appeared before a panel of the Kansas Board for Discipline of Attorneys to answer a four-count complaint involving representation of four different clients. After the panel heard evidence, it concluded in its final hearing report that Dennis had violated KRPC 1.1 (1998 Kan. Ct. R. Annot. 279) (competence), 1.3 (1998 Kan. Ct. R. Annot. 288) (diligence), 1.4 (1998 Kan. Ct. R. Annot. 296) (communication), 1.15 (1998 Kan. Ct. R. Annot. 333) (safekeeping property), 1.16 (1998 Kan. Ct. R. Annot. 341) (declining or terminating representation), 3.3 (1998 Kan. Ct. R. Annot. 354) (candor toward the tribunal), and 8.4 (1998 Kan. Ct. R. Annot. 386) (misconduct) and Supreme Court Rule 207 (1998 Kan. Ct. R. Annot. 222) (failure to cooperate and respond to inquiries in a disciplinary investigation). The panel recommended indefinite suspension from the practice of law.

While respondent filed exceptions to the final hearing report of the panel of the Kansas Board for Discipline of Attorneys, no brief was filed, and the respondent is deemed to have conceded the findings of fact made by the hearing panel are supported by the evidence pursuant to Supreme Court Rule 212(e)(4) (1998 Kan. Ct. R. Annot. 236); see *State v. Nelson,* 233 Kan. 473, 473, 663 P.2d 303 (1983).

The findings of fact and conclusions of law made by the hearing panel are as follows:

"1. Stephen J. Dennis is an attorney at law, Kansas Attorney Registration Number 12453. His last registration address with the Clerk of the Appellate Courts of Kansas [is in] Fairway, KS . . . . The Respondent's new address is [in] Overland Park, KS . . . .

"COUNT I — A7149
"Powell Complaint

"2. Thomas and Beatrice Powell retained the Respondent in September 1995 to represent them in an appeal to be filed with the Court of Appeals of the State of Kansas in an action previously tried in the District Court of Bourbon County, Kansas. (*Thomas Powell, et al. v. The City of Fort Scott, Kansas.*) The Respondent and the Powells entered into a written fee contract on September 4, 1995, which called for a fee not to exceed a total of $5,000.00. The Powells paid the Respondent $1,250.00 on July 1, 1996, and an additional $1,000.00 on October 1, 1996. The Powells also paid $2,200.00 to a court reporter to obtain a transcript of the district court trial. This transcript was provided to the Respondent for his review.

"3. Mr. and Mrs. Powell signed a written fee contract. (Exhibit 3) The Powells never received a contract which was signed by the Respondent.

"4. On May 20, 1996, the Respondent, on behalf of the Powells, filed a motion for leave to file a docketing statement out of time. That motion was granted on June 5, 1996, and the appeal proceeded as No. 96-76801-A. The docketing statement was filed by the Respondent on June 5, 1996.

"The appeal arose out of the Powells' assertion that Mr. Powell had been unlawfully arrested and beaten on August 6, 1992 by two members of the Fort Scott Police Department. On appeal, the Respondent raised issues of failing to direct a verdict in favor of the plaintiffs. The verdict being against the weight of the evidence, failure of the trial court to grant the motion for a new trial filed by the Powells, and an allegation that the trial court failed to adequately investigate allegations of jury misconduct.

"5. On August 14, 1996, the Respondent filed a motion for extension of time. He requested and was granted until September 13, 1996 to file his client's brief. On September 13, 1996, the Respondent filed an additional motion for extension of time. This motion was granted and the Respondent was given until October 15, 1996 to file his client's brief. The Respondent was advised by the court that no further extensions of time would be granted.

"6. On December 11, 1996, an order signed by Judge Robert L. Gernon dismissed the Powells' appeal due to failure to file a timely brief. (Exhibit 6) The Respondent never provided the Powells with any written explanation for [why] he failed to pursue the appeal.

"7. In June 1997 the Powells retained Howard Bodney, a Kansas attorney, to investigate the possibility of a legal malpractice claim against the Respondent for

failure to pursue the Powells appeal. On June 23, 1997, both the Powells and Howard Bodney wrote a letter to the Respondent informing the Respondent of Bodney's representation of the Powells and requesting a copy of Respondent's file as quickly as possible. The trial transcript, which the Powells had paid for, was also requested. The Respondent did not respond to this request. On October 29, 1997, Mr. Bodney wrote another letter to the Respondent in which he requested the file and transcript. The Respondent did not respond to this request and has never returned the file or the transcript.

"8. The Respondent failed to diligently and competently pursue the appeal of the Powells and failed to return the file and transcript of the Powells to them upon proper request and failed to make an accounting to the Powells regarding the fees which they paid to him when the Powells terminated his representation.

"9. On January 9, 1998, the Respondent met with the investigator of this complaint, Mr. Clifford Cohen. At the end of that meeting, the Respondent promised to provide the investigator with documents and a letter of explanation with regard to the appeal. The Respondent failed to provide this information to the investigator.

## "Count II — DA7172
## "Harbert-Yeargen Complaint

"10. A complaint was docketed as a result of information received by the Disciplinary Administrator's office regarding the Respondent's representation of a corporation, Harbert-Yeargen, Inc. The representation involved a case filed in the United States District Court for the District of Kansas.

"11. A lawsuit was filed in the United States District Court for the District of Kansas on September 5, 1996. A company named Dayco Printing was the plaintiff in the action styled *Dayco Printing v. Harbert-Yeargen, Inc., et al.*, 96-2389-KHV. The cause of action was for recovery under a payment bond on a federal construction project located in the state of Kansas.

"12. A named defendant in the action, Commercial Waterproofing, Inc., filed an answer and a cross-claim on October 30, 1996 against Harbert-Yeargen.

"13. The Respondent was retained by Harbert-Yeargen on November 5, 1996 to represent its interests in the lawsuit. On November 21, 1996, the Respondent acknowledged receipt of suit papers from his client. In a letter to a representative of Harbert-Yeargen, the Respondent made the following statement: 'Rest assured that I will protect the answer date and will protect the interests of Harbert-Yeargen, Inc.' Commercial Waterproofing filed a motion for default judgment. On March 27, 1997, an order was signed by The Honorable Kathryn Vratil, U.S. District Court Judge, finding Harbert-Yeargen in default for failure to answer the cross-claim. Commercial Waterproofing was granted a default judgment against Harbert-Yeargen for $60,990.00.

"14. On June 12, 1997, the Respondent filed his entry of appearance on behalf of Harbert-Yeargen. On that same date, the Respondent filed a motion to set aside judgment and for leave to file an answer out of time. The Respondent stated

that the basis for his request for relief was 'excusable neglect' under the Federal Rules of Civil Procedure (60(b)(1)). The Respondent claimed in that motion that he did not know that Harbert-Yeargen had been properly served or that the default judgment had been rendered until June 6, 1997.

"15. On August 12, 1997, in a memorandum and order signed by Judge Vratil, the court found that there was no 'excusable neglect' and the Respondent's motion was denied. The default judgment against Harbert-Yeargen was allowed to stand.

"16. On October 24, 1997, Richard Enochs entered his appearance on behalf of Harbert-Yeargen. On October 24, 1997, Richard Enochs filed a motion to set aside judgment pursuant to Federal Rules of Civil Procedure 60(b)(6). Mr. Enochs alleged that the default judgment should be set aside because of the 'gross neglect of previous counsel,' the respondent, Stephen J. Dennis. In the motion to set aside judgment filed by Mr. Enochs, the following information was provided to the court and was either admitted to by the Respondent or proved by clear and convincing evidence.:

a. Harbert-Yeargen first contacted the Respondent about representing it on September 5, 1996.

b. On November 21, 1996, the Respondent acknowledged receipt of suit papers, including the answer and cross-claim of co-defendant against Harbert-Yeargen and replied to this defendant, 'rest assured, I will protect the answer date and protect the interest of Harbert-Yeargen.'

c. On January 21, 1997, Mr. David Gorman, in-house counsel for Harbert-Yeargen was advised by the Respondent that he had filed an answer. (Exhibit 15)

d. On January 29, 1997, a letter was forwarded to the Respondent advising him of the pleadings. Harbert-Yeargen again asked the Respondent to protect the company's interests.

e. On April 10, 1997, a letter from David Gorman was forwarded to the Respondent enclosing the answer and cross-claim involving the personal service which had been obtained upon the defendant, asking him to file the appropriate response. (Exhibit 14)

f. The Respondent took the position on behalf of his client Harbert-Yeargen that the cross-claim had not been properly served on Harbert-Yeargen and that therefore the court lacked jurisdiction over Harbert-Yeargen.

g. On June 11, 1997, the Respondent had a conversation with Mr. Wall, a representative of Harbert-Yeargen, but did not advise his client that a default judgment had been entered on May 27, 1997.

h. On June 12, 1997, Mr. David J. Gorman, a representative of Harbert-Yeargen, requested a status report from the Respondent.

i. The Respondent had a conversation with Mr. Gorman on June 18, 1997 and the Respondent said that everything was fine and the Respondent would provide a detailed status report. Respondent further said he was working with the construction people to document materials for defense of the case.

j. The Respondent never advised his client, Harbert-Yeargen, that on June 2, 1997 he filed a motion to set aside judgment nor did the Respondent ever provide

Harbert-Yeargen with the motion which he filed to set aside judgment nor did he ever provide his client a copy of the court's order of August 12, 1997 overruling the Respondent's motion to set aside judgment. It was not until October 6, 1997 that Harbert-Yeargen became aware of a default judgment.

k. After finding out about the default judgment, representatives of Harbert-Yeargen attempted to contact the Respondent and ultimately hired Richard Enochs to defend or attempt to set aside the default judgment.

"17. On December 15, 1997, a memorandum and order was signed by Judge Vratil in which she denied the motion to vacate and set aside judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). A satisfaction of judgment dated March 4, 1998 was filed in the case.

"18. Harbert-Yeargen paid the law firm of Wallace, Saunders, Austin, Brown & Enochs the sum of $2,426.69 for the effort to set aside the default judgment entered as a result of the Respondent's failure to defend the cross-claim.

"COUNT III —DA7214

"Solien Complaint

"19. Antonina T. Solien was employed by Physicians Business Network in the capacity of a billing clerk. From 1993 through 1995 the complainant suffered from migraine headaches and lost substantial time at work. The complainant filed for short-term disability benefits through her employer and took a leave of absence. When she returned to work on August 1, 1995, she was offered a job at $4.50 per hour. Previously, she had earned $9.25 an hour.

"20. In January 1996 the complainant met with the Respondent. The complainant felt that she might have a claim under the Family Medical Leave Act and so advised the Respondent. The Respondent informed the complainant that she had a better claim under the Americans With Disabilities Act because her condition with regard to her migraine headaches was permanent.

"21. The Respondent agreed to represent the complainant. The Respondent filed suit under the Americans With Disabilities Act but failed to timely effect service of process. The case was pending before Federal Court Judge Kathryn Vratil. The records (Exhibit 19) of the case reflect that the suit was filed October 14, 1996. On February 4, 1997, the court ordered the plaintiff to show cause in writing why service of process had not been made and good cause why the claim should not be dismissed. The Respondent replied on February 21, 1997 at which time the court granted an extension to May 9, 1997 to perfect service of process. Subsequently, the Respondent did secure service of process in the action and discovery commenced.

"22. In September 1997 the Respondent contacted Antonina T. Solien about her deposition. She was deposed and told by the Respondent she had done a good job. The Respondent promised to depose 'everyone involved in Physicians Billing Network.'

"23. In November 1997, complainant went to the Respondent's office in an attempt to find out information about her case. Respondent was not at his office

and the Respondent did not return numerous telephone calls made by the complainant to the Respondent during this time period. In fact, the complainant had no contact with the Respondent from the date of her deposition in September 1997 until after her scheduled trial date, which was January 6, 1998.

"24. Some time in January 1998, the complainant contacted Judge Vratil's office. She was concerned because she knew she had a trial date but could not contact her attorney. The complainant was informed by an individual at Judge Vratil's office that the complainant's case had been dismissed on November 18, 1997 (see Exhibit 19, Order dated November 18, 1997) due to the failure of the Respondent to reply or file any response to a motion for summary judgment filed by the defendant Physicians Business Network, Inc.' The complainant had never been told by the Respondent that a summary judgment motion had been filed in her case or that her case had been dismissed.

"25. Subsequently, the complainant was able to contact the Respondent by 'staking out' his office. In a later conversation, the Respondent represented to the complainant that he would 'get other people' to write Judge Vratil and get the case reinstated. The Respondent did not do this. The complainant hired a new attorney to pursue a claim under the Family Medical Leave Act, but due to the statute of limitations, the FMLA claim was rejected.

"26. On January 19, 1998, the complainant confronted the Respondent at his office. The Respondent at that time promised he would get others to intercede on her behalf with Judge Vratil to get her case reinstated. Despite numerous attempts after this January 19 meeting, the complainant was never able to again get in contact with the Respondent. Her case was never reinstated in federal court.

"27. The Respondent agreed to provide documents and a letter of explanation with respect to the Solien complaint to the investigator, Mr. Cohen. He failed to do so.

### "COUNT IV — DA7214
#### "Metz Complaint.

"28. The Respondent was retained by the Kansas National Education Association (KNEA) in April 1996 to represent complainant Susan Metz in connection with a request for a due process hearing she made with USD 500. The complainant wished to appeal her termination of employment by the Board of Education.

"29. The Respondent was able to arrange for a hearing on the complainant's claim on April 9, 1997. The Respondent did not inform his client of the hearing date. Consequently, the client did not appear at the hearing and neither did the Respondent. The complainant's appeal was ultimately dismissed by the administrative hearing officer on April 9, 1997. This was fatal to Ms. Metz's case.

"30. The Respondent had been provided with all written material and witness information to assist him in preparing for a hearing. The Respondent failed to review the material or to prepare for the hearing.

"31. The Respondent failed to provide the investigator, Mr. Cohen, with information necessary to conduct his investigation of the complaint.

### "CONCLUSION OF LAW

"By clear and convincing evidence, the Panel finds that:

"With regards to Count I of the formal complaint, the Respondent Stephen J. Dennis, violated Kansas Rules of Professional Conduct 1.1 [1998 Kan. Ct. R. Annot. 279], 1.3 [1998 Kan. Ct. R. Annot. 288], 1.4 [1998 Kan. Ct. R. Annot. 296], 1.15 [1998 Kan. Ct. R. Annot. 333], 1.16 [1998 Kan. Ct. R. Annot. 341], and 8.4 [1998 Kan. Ct. R. Annot. 386], and Supreme Court Rule 207 [1998 Kan. Ct. R. Annot. 222].

"With regards to Count II of the complaint, DA7172, the Harbert-Yeargen complaint, the Respondent, Stephen J. Dennis, violated Kansas Rules of Professional Conduct 1.1 [1998 Kan. Ct. R. Annot. 279], 1.3 [1998 Kan. Ct. R. Annot. 288], 1.4 [1998 Kan. Ct. R. Annot. 296], 3.3 [1998 Kan. Ct. R. Annot. 354], and 8.4 [1998 Kan. Ct. R. Annot. 386].

"With regards to Count III, DA7214, the Solien complaint, the Respondent, Stephen J. Dennis, violated Kansas Rules of Professional Conduct 1.1 [1998 Kan. Ct. R. Annot. 279], 1.3 [1998 Kan. Ct. R. Annot. 288], 1.4 [1998 Kan. Ct. R. Annot. 296], 1.15 [1998 Kan. Ct. R. Annot. 333], 1.16 [1998 Kan. Ct. R. Annot. 341], 8.4 [1998 Kan. Ct. R. Annot. 386], and Supreme Court Rule 207 [1998 Kan. Ct. R. Annot. 222].

"With regards to Count IV, DA7268, the Susan Metz (KNEA) complaint, the Respondent Stephen J. Dennis, violated Kansas Rules of Professional Conduct 1.1 [1998 Kan. Ct. R. Annot. 279], 1.3 [1998 Kan. Ct. R. Annot. 288], 1.4 [1998 Kan. Ct. R. Annot. 296], 1.15 [1998 Kan. Ct. R. Annot. 333], 1.16 [1998 Kan. Ct. R. Annot. 341], and 8.4 [1998 Kan. Ct. R. Annot. 386], and Supreme Court Rule 207 [1998 Kan. Ct. R. Annot. 222]."

In considering aggravating factors, the panel found that respondent had been suspended on November 4, 1998, by the Kansas Supreme Court for failure to comply with the CLE requirements for 1997. In addition, an attorney had been appointed on December 14, 1998, pursuant to Supreme Court Rule 221 (1998 Kan. Ct. R. Annot. 263) to audit respondent's files and take action to protect respondent's clients.

The panel further found (1) a pattern of misconduct, (2) multiple offenses, (3) vulnerability of the victims, (4) substantial experience in the law, and (5) a refusal to acknowledge the wrongful nature of the conduct as relevant to this case.

In considering mitigating factors, the panel found:

"(a) An absence of a prior disciplinary record.

"(b) An absence of dishonest or selfish motive.

"(c) Personal or emotional problems that have contributed to the violation of the Model Rules. In particular, the Respondent testified that during the time that these complaints arose, his wife was misdiagnosed with a life threatening illness, underwent surgery, and then the misdiagnosis was discovered. In addition, he had serious financial problems that he hid from his wife which ultimately led to his divorce. He was suffering from depression and the Panel was provided with documents demonstrating that he suffers from depression.

"(d) Previous good character and reputation in the community. Respondent provided letters from friends, clients, and lawyers in support of his character and reputation. Members of the bar stepped forward to attest to the Respondent's character and reputation and his abilities in prior matters.

"(e) Mental Disability. There is evidence that the Respondent is affected by a mental disability as demonstrated by Respondent's Exhibit A, the opinion letter dated October 15, 1998 to the Respondent's former counsel, Gregory A. Lee, from Dr. Stephen E. Peterson in which Respondent was diagnosed under DSM IV a 'single episode moderate major depression without psychotic features.' The report goes on to indicate that the face-to-face assessment strongly supported a diagnosis of 'moderate depression.' "

The respondent proposed a plan of supervised probation. The Disciplinary Administrator recommended supervision for one year. The panel was concerned with protection of the public and recommended indefinite suspension. The panel felt that in the event of respondent's reinstatement at some future date, he should have demonstrated completion of a course of psychological treatment and restitution of the claims made against him, plus reimbursement of his corporate client for the costs of the motion filed by Richard Enochs.

The hearing panel's report was considered by the Kansas Supreme Court on September 16, 1999.

The Disciplinary Administrator reported respondent had been disbarred from practice before the federal district courts in the 10th Circuit on March 22, 1999, and recommended indefinite suspension.

Respondent pointed to his prior appearances before this court and asked for supervised probation. He informed the court he was working in the real estate field. He argued his conduct was less egregious than other cases where indefinite suspension had been ordered. He pointed out he was receiving treatment for depression in 1997 and 1998.

Respondent said his federal court client had dismissed its appeal and the Susan Metz claim against him may not be pursued.

The court, being fully advised, finds that the factual findings and conclusions of law are supported by clear and convincing evidence. We are in substantial agreement with the recommendations of the hearing panel. We also point out that no workable plan of supervised probation has ever been presented. See *In re Long*, 266 Kan. 664, 667, 972 P.2d 773 (1999).

IT IS THEREFORE ORDERED that Stephen J. Dennis be indefinitely suspended from the practice of law in the state of Kansas effective the date of this opinion in accordance with Supreme Court Rule 203(a)(2) (1998 Kan. Ct. R. Annot. 210).

IT IS FURTHER ORDERED that, in the event respondent should seek reinstatement, he shall be subject to all of the reinstatement requirements, including a hearing as required by Supreme Court Rule 219 (1998 Kan. Ct. R. Annot. 256).

IT IS FURTHER ORDERED that in the event the proceedings under Supreme Court Rule 221 have not resulted in protection of all former clients, that respondent comply with Supreme Court Rule 218 (1998 Kan. Ct. R. Annot. 246), that the costs of these proceedings be assessed to the respondent, and that this order be published in the official Kansas Reports.