No. 89,829

In the Matter of GARY L. CONWELL, *Respondent*.

69 P.3d 589

Opinion filed May 30, 2003.

*Alexander M. Walczak,* deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett,* disciplinary administrator, was with him on the brief for petitioner.

*Stephen P. Weir,* of Topeka, argued the cause for respondent, and *Gary L. Conwell,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the Disciplinary Administrator against Respondent Gary L. Conwell, an attorney admitted to the practice of law in the state of Kansas, whose last known address is Topeka, Kansas (hereinafter Respondent).

The formal complaint filed against the Respondent alleged multiple violations of KRPC 1.15 (2002 Kan. Ct. R. Annot. 384) (safekeeping property); KRPC 5.1 (2002 Kan. Ct. R. Annot. 430) (responsibilities of a partner or supervisory lawyer); and KRPC 8.4 (2002 Kan. Ct. R. Annot. 449) (misconduct) by knowingly assisting Thomas C. Kelley, his partner, in violating the Kansas Rules of Professional Conduct. A panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing on August 22, 2002, and later prepared a report containing its findings of fact, conclusions of law, and recommendations for discipline. The Respondent appeared before the panel and filed no exceptions to its report. We adopt the panel's findings, conclusions, and recommendations as modified.

## SUMMARY OF UNCONTESTED FACTS

The Respondent was admitted to practice law in the state of Kansas in 1982. On August 29, 1996, Thomas C. Kelley, attorney at law and Respondent's former colleague, incorporated Freshfields Investment International, LTD (Freshfields). Kelley was its sole incorporator, registered agent, equity owner, and director at

that time. Six months later, in February 1997, Kelley and the Respondent formed a law firm, Kelley & Conwell, LLC. The law firm officed in Topeka and served as counsel for Freshfields. One year later, in February 1998, Kelley and the Respondent opened a trust account and an operating account for their law firm with Commerce Bank and Trust of Topeka. The Respondent was primarily responsible for overseeing the operating account, including its reconciliation. He occasionally reconciled the trust account, although Kelley had the primary oversight responsibility.

Kelley later changed Freshfields' name to Hilands Consulting Company, Inc. (Hilands), and Hilands officed in a suite adjacent to the law firm. Kelley and Glyn Keatley were Hilands' equity owners and officers, Kelley acted as its agent, salesperson, and representative, and Kelley & Conwell continued to serve as its counsel. On September 22, 1998, Kelley opened a bank account for Hilands with the Commerce Bank and Trust of Topeka, the same bank where the law firm maintained its accounts.

Hilands advertised on the Internet that it could provide financing for large projects. During 1998 and 1999, Hilands attracted several individuals interested in such financing. Generally, Hilands required the individual to pay an advance fee of $25,000 to conduct a "due diligence" investigation. These funds were then deposited into the Kelley & Conwell trust account and, per the written contracts between Hilands and the individuals, Kelley & Conwell was to perform such investigations. According to written contracts and oral statements of Keatley and Kelley, the due diligence fee was to be refunded if the financing was not obtained. In at least one written agreement, the due diligence fee was to be used by Kelley & Conwell, as it saw fit, to obtain the necessary due diligence report and evaluate the funding request.

The individuals interested in obtaining financing through Hilands and the amount of money they deposited into the Kelley & Conwell trust account for due diligence fees and investment capital are as follows:

a. Philip Hutchings $25,000
b. Beverly Stone $525,000
c. Tania Van den Broek $450,000

| | | |
|---|---|---|
| d. | Frank Zarro | $25,000 |
| e. | Bill Heesch | $20,000 |
| f. | Richard Morello | $250,000 |
| g. | Dar St. Clair | $10,000 |
| h. | Jose A. Gonzales | $25,000 |

The Respondent's involvement with these individuals was limited to (1) conducting limited due diligence investigations and (2) writing letters to the individuals at Kelley's request and direction. He did not meet with them other than during the due diligence investigations and was not involved with soliciting their business or offering to obtain or attempting to obtain financing for them.

Shortly after the individuals' funds were deposited into the Kelley & Conwell trust account, they were transferred to Hilands' account at the same bank. Thereafter, Keatley and Kelley converted the funds to their personal use. While it appears that Hilands refunded some investment capital on May 5, 1999, none of the due diligence fees were returned to the individuals.

Shortly thereafter, in mid-May 1999, the Respondent learned that individuals who had deposited their $25,000 due diligence fees and other funds into his law firm's trust account were lodging complaints. He then discussed the matter with Kelley, who assured him he would see that the fees were returned. Despite Respondent's knowledge of the complaints and of a judgment entered in favor of Hutchings against Hilands and Kelley, he failed to take any action to protect the individuals. The following month, on June 21, the Kansas Securities Commissioner issued an Emergency Cease and Desist Order to Hilands, Keatley, Kelley, and their representatives or agents. Two months later, on August 31, 1999, the Respondent left the law firm.

Promising to procure a loan for any person for a fee, promising to assist any person in procuring a loan from a third party for a fee, or promising to consider whether or not to make a loan to any person for a fee constitutes acting as a loan broker pursuant to K.S.A. 50-1001(c). Keatley, Kelley, and Hilands have never been registered as loan brokers with the Office of the Kansas Securities Commissioner, pursuant to K.S.A. 50-1001 *et seq*. By acting as loan brokers without proper registration, Keatley, Kelley, and Hilands

violated K.S.A. 50-1002. Accordingly, on April 5, 2000, Kelley entered a stipulation for consent order, and 1 week later the Securities Commissioner entered a consent order against him. Two years later, on May 20, 2002, Kelley entered a plea of guilty to mail fraud, a felony, in the United States District Court for the District of Kansas. The next day he surrendered his license to practice law in the state of Kansas, and this court disbarred him on May 31. The Respondent, however, has not been charged with any crimes as a result of his association with Hilands, Keatley, or Kelley.

## PANEL'S CONCLUSIONS OF LAW

Based upon the above uncontested facts, the panel concluded, as a matter of law, that the Respondent violated KRPC 1.15 (2002 Kan. Ct. R. Annot. 384) (safekeeping property); KRPC 5.1 (2002 Kan. Ct. R. Annot. 430) (responsibilities of a partner or supervisory lawyer), and KRPC 8.4 (2002 Kan. Ct. R. Annot. 449) (misconduct), as detailed below.

### KRPC 1.15(b) and KRPC 1.15(c)

These rules provide as follows:

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

The panel concluded that the Respondent violated KRPC 1.15(b) and KRPC 1.15(c) when, after he permitted the due diligence fees to be deposited into his law firm trust account, he failed to properly safeguard the funds.

## KRPC 5.1(c)(2)

This rule provides as follows:

"(c) A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if:

. . . .

"(2) The lawyer is a partner in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."

The panel concluded that Respondent knew or should have known that Hilands, Keatley, and Kelley were improperly dealing with the due diligence fees, and he should have taken steps to attempt to protect the individuals who had deposited funds into his law firm's trust account. Accordingly, the panel concluded that the Respondent violated KRPC 5.1(c)(2) because he failed to take reasonable remedial action.

## KRPC 8.4(a)

This rule provides that it is professional misconduct for an attorney to "[v]iolate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another."

The panel concluded that the Respondent violated KRPC 8.4(a) by violating KRPC 1.15 and KRPC 5.1 and by knowingly assisting Kelley, his law partner, in violating the Kansas Rules of Professional Conduct.

## ABA Standards

In making its recommendation for discipline, the panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter Standards), particularly Standard 3. On the subjects of Duty Violated and Mental State, Respondent knowingly violated his duty to the profession. On the subject of Injury, the individuals seeking funding were significantly injured financially as a result of the Respondent's knowing violation of his duty to the profession.

On the subject of Aggravating Factors, several were present. In regard to the factor of Prior Disciplinary Offenses, Respondent had two. On April 20, 2001, the Kansas Supreme Court had censured Respondent for violating KRPC 8.4(b) and KRPC 8.4(d). See *In re Conwell*, 271 Kan. 304, 20 P.3d 1260 (2001). The underlying facts of the case revealed that in April 1999 the Respondent had been arrested and charged with possession of cocaine, possession of marijuana, and possession of drug paraphernalia in the Shawnee County District Court. After he was arrested, the Respondent voluntarily ceased practicing law. In March 2000 he had entered into a 24-month diversion agreement with the Shawnee County District Attorney's office which, among other things, required him to continue to refrain from practicing law for 1-year commencing December 1, 1999. Additionally, on May 30, 2001, the Disciplinary Administrator had informally admonished the Respondent for violating KRPC 1.16(d) (2002 Kan. Ct. R. Annot. 395). In that case, he failed to notify a client that he was closing his practice and when the client attempted to contact the Respondent, he was unable to do so. The events which led to the published censure and the informal admonition occurred during the same time frame as the events which led to his problem in the instant case.

In regard to the aggravating factor of Dishonest or Selfish Motive, the due diligence fees paid by Hilands' investors represented potential income for Respondent's law firm and, therefore, potential income for him. Because he stood to profit by Hilands' scheme, his misconduct was motivated by selfishness. Based on the aggravating factor of Vulnerability of Victim, the individuals who sought assistance from Hilands were assured by Keatley, Kelley, and the Respondent that the due diligence fees would be refunded to them if Hilands was unable to arrange for the financing. Those assurances made the individuals particularly vulnerable to the misconduct that occurred, especially since several of the investors resided overseas. Based on the aggravating factor of Substantial Experience in the Practice of Law, the Respondent had been practicing law for 16 years at the time the misconduct began.

On the subject of Mitigating Circumstances, several were present. For the mitigating factor of the present and past attitude of

the attorney, the Respondent fully cooperated in the investigation and prosecution of this matter. Moreover, he fully acknowledged his misconduct. For the mitigating factor of previous good character and reputation in the community, the Respondent is an active and productive member of the bar in Topeka, enjoys the respect of his peers and clients, and generally possesses a good character and reputation, as evidenced by letters received by the panel. For the mitigating factor of remorse, the Respondent expressed genuine remorse at the hearing.

In addition to the above-cited factors, the panel considered Standard 7.2, which provides that "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." It determined that the Respondent should have ensured that the trust account was not improperly utilized.

## PANEL'S RECOMMENDATION

The Respondent and the Disciplinary Administrator both recommended that the Respondent's license to practice law in the state of Kansas be suspended for a period of 2 years, that the imposition of the discipline be suspended, and that he be placed on probation for 2 years subject to the following terms and conditions:

1. The Respondent shall be supervised by Stephen P. Weir, a licensed Kansas attorney. He shall meet with Mr. Weir as directed by Mr. Weir. Mr. Weir shall have access to the Respondent's files, employees, and calendar to the extent necessary to review the compliance with the terms and conditions of probation.

2. Each quarter, Mr. Weir shall report to the Disciplinary Administrator's office regarding the status of the Respondent's compliance with the terms and conditions of probation. Mr. Weir shall report any material deviation from proper practice to the Disciplinary Administrator's office immediately upon discovery.

3. The Respondent shall compensate Mr. Weir for time expended in the supervision of the probation.

4. The Respondent shall refrain from using cocaine and all other illegal drugs.

5. The Respondent shall submit to random urinalysis, at his expense, upon a request by Mr. Weir or the Disciplinary Administrator's office 2 to 4 times per year.

6. The Respondent shall obtain a follow-up evaluation by a psychologist or a psychiatrist to determine if additional substance abuse treatment, psychological treatment, or psychiatric treatment is needed to ensure that he is able to appropriately represent his clients. The psychologist or psychiatrist shall prepare a report regarding any diagnosis, treatment plan, and prognosis. The Respondent shall sign all necessary releases to allow Mr. Weir and the Disciplinary Administrator's office to review the report and discuss the recommendations with the psychologist or psychiatrist. He shall provide a copy of the report to Mr. Weir and the Disciplinary Administrator's office and shall follow all treatment recommendations contained in the report.

7. The Respondent's legal practice shall be limited to the representation of Mr. and Mrs. H.T. Paul and their various companies. He shall not represent anyone other than Mr. and Mrs. H.T. Paul and their various companies and shall not appear in any court or sign any pleadings.

8. The Respondent shall perform 40 hours of community service work. Of the 40 hours of community service, he may perform no more than 20 hours by volunteering his time with youth sports. The Respondent shall provide verification that he has completed the community service work to Mr. Weir and the Disciplinary Administrator by September 1, 2003.

9. The Respondent shall not associate with Thomas C. Kelley or Glyn Keatley.

10. The Respondent shall not hold money in trust for his clients nor shall he have a lawyer trust account.

11. In addition to the annual requirements of continuing legal education, during each of the reporting years while the Respondent is on probation, he shall successfully complete at least 2 additional hours of continuing legal education on managing a law office or managing a law office trust account. He shall provide appropriate evidence that he complied with this term of probation to Mr. Weir

and the Disciplinary Administrator's office by June 30 of each year he is on probation.

12. The Respondent shall conduct research on attorney trust accounts and Rule 1.15 and shall locate at least two law review articles on this subject. He shall read the law review articles and provide a report to Mr. Weir and the Disciplinary Administrator's office regarding the articles by June 30, 2003.

13. The Respondent shall cooperate with the Disciplinary Administrator by providing any requested information.

14. The Respondent shall not violate the Kansas Supreme Court Rules, including the Kansas Rules of Professional Conduct.

15. The Disciplinary Administrator shall promptly inform the court if the Respondent fails to comply with the terms and conditions of probation. If he violates probation, the court shall suspend the Respondent from the practice of law for a period of 2 years, without further formal proceedings.

16. Mr. Weir shall be acting as an officer and agent of the court when supervising the Respondent pursuant to the terms and conditions of probation. Mr. Weir shall be afforded all immunities granted by Kansas Supreme Court Rule 223 (2002 Kan. Ct. R. Annot. 299) during the supervisory activities.

Finally, the panel recommended that the Respondent undergo a hearing at the conclusion of the probation to determine whether he successfully completed the terms and conditions of probation. It recommended that the hearing be conducted like a Kansas Supreme Court Rule 219 (2002 Kan. Ct. R. Annot. 289) reinstatement hearing and that the Respondent be required to establish by clear and convincing evidence that he complied with each and every term and condition of probation. In the event the Respondent would be unable to do so, he would be suspended from the practice of law for a period of 2 years.

## DISCUSSION

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260); *In re Harris*, 261 Kan. 1063, 1066, 934 P.2d 965 (1997). A hearing panel's report is deemed

admitted under Rule 212(c) and (d) (2002 Kan. Ct. R. Annot. 266) when a Respondent fails to file exceptions. *In re Howelett*, 266 Kan. 401, 969 P.2d 890 (1998); accord *In re Juhnke*, 273 Kan. 162, 168, 41 P.3d 855 (2002). In the case at hand, since Respondent filed no exceptions to the panel's report, we conclude that the panel's findings of fact are supported by clear and convincing evidence and that the facts established support the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

We note that a hearing panel should recommend that a Respondent be placed on probation only (1) when he or she has developed a workable, substantial, and detailed plan of probation in advance of the hearing, (2) when there are unique circumstances or when it is an exceptional case with persuasive mitigating factors, and (3) when it serves the best interests of the legal profession and the citizens of Kansas. See *In re Dennis*, 268 Kan. 48, 56, 991 P.2d 394 (1999); *In re Pomeroy*, 252 Kan. 1044, 1047, 850 P.2d 222 (1993); Internal Operating Rule E. 8. of the Kansas Board For Discipline of Attorneys. We also note that Respondent's March 2000 24-month diversion agreement with the Shawnee County District Attorney's office required him, among other things, to submit to random urinalysis and to undergo substance abuse treatment. We further observe that the diversion agreement contained this and other provisions similar to the terms and conditions of his present probation plan, and supervision plan, *i.e.*, Nos. 4, 5, and 6.

We conclude that the facts of the instant case meet the above-stated requirements for allowing probation. We therefore adopt the panel's recommended discipline. However, we do not adopt the panel's recommendation that Respondent be subjected to a hearing "conducted like a Kansas Supreme Court Rule 219 hearing."

IT IS THEREFORE ORDERED that Gary L. Conwell's license to practice law in the state of Kansas be suspended for a period for 2 years, but the imposition of this discipline be suspended and that he be placed on probation for 2 years from the date of this order

pursuant to the 16 terms and conditions set forth in the probation and supervision plan.

IT IS FURTHER ORDERED that at the end of the 2 years, the Disciplinary Administrator shall certify to the Supreme Court that the Respondent has abided by all the conditions of his probation and satisfactorily completed probation.

IT IS FURTHER ORDERED that if Respondent fails to abide by the conditions set forth herein, a show cause order shall issue to Conwell, and we will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that Respondent comply with Supreme Court Rule 218 (2002 Kan. Ct. R. Annot. 279), that the costs of these proceedings be assessed to the Respondent, and that this opinion be published in the official Kansas Reports.

ABBOTT and LUCKERT, JJ., not participating.

LARSON, S.J., and DAVID S. KNUDSON, J., assigned.■