No. 108,206

In the Matter of DOUGLAS LEE BAKER, *Respondent.*

(294 P.3d 326)

Opinion filed February 15, 2013.

*Alexander M. Walczak,* Deputy Disciplinary Administrator, argued the cause and was on the brief for the petitioner.

*Joseph R. Colantuono,* of Colantuono Bjerg Guinn, LLC, of Overland Park, argued the cause, and *Douglas Lee Baker,* respondent, argued the cause pro se.

*Per Curiam:* This is a contested original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Douglas Lee Baker of Lawrence, an attorney admitted to the practice of law in Kansas in 1975.

On December 15, 2011, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on January 9, 2012. On March 28, 2012, a hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys, where the respondent was personally present and was represented by counsel. The hearing panel determined that the respondent violated KRPC 4.1 (2012 Kan. Ct. R. Annot. 605) (truthfulness in statements to others); KRPC 8.4(c) (2012 Kan. Ct. R. Annot. 643) (engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and KRPC 8.4(g) (engaging in any other conduct that adversely reflects on the lawyer's fitness to practice law). The respondent stipulated to the factual allegations as set forth in the complaint and also stipulated to having violated KRPC 4.1, KRPC 8.4(c), and KRPC 8.4(g).

After the hearing's conclusion, the panel made the following findings of fact, conclusions of law, and recommendation to the court:

"FINDINGS OF FACT

. . . .

"7. . . . The Kansas Supreme Court admitted the Respondent to the practice

of law on September 12, 1975. Later, in September, 1997, the Idaho Supreme Court admitted the Respondent to the practice of law. After returning to live in Kansas, the Respondent transferred his Idaho license to inactive status.

"8.   In 1992, the Respondent began acquiring gold mining claims for mining operations in Idaho. At a later time, he also acquired mining claims in Arizona.

"9.   On February 20, 2001, the Respondent formed and organized Arizona Idaho Mining, LLC ('AZID') as an Idaho limited liability company. The Respondent named himself managing member of AZID. AZID was purportedly formed to engage in the exploration, development, and production of gold and other precious metals, primarily in the states of Arizona and Idaho by acquiring interests in Custer Mining, LLC and Western Metallurgical Company, LLC ('Western').

"10.   That same day, February 20, 2001, the Respondent formed and organized Custer Mining, LLC ('Custer') as an Idaho limited liability company. Western Metallurgical did not exist in February, 2001. [Footnote 1: On July 25, 2001, the Respondent formed and organized Western Metallurgical Company, LLC ('Western') as a Nevada limited liability company. Western was formed to conduct a mining operation on 85 acres in Arizona.]

"11.   The Respondent prepared a securities offering document by AZID, also dated February 20, 2001. The offering document stated, 'the managing member [of AZID] is accountable to the Members as a *fiduciary* and must act with integrity and good faith to promote the Members' interests.'

"12.   The Respondent also prepared a stock ownership document. The Respondent provided a copy of the offering document and the stock ownership document to prospective investors to explain the terms of an investment in AZID.

"13.   The Respondent offered and sold membership interests in AZID to 36 investors, in six states, raising approximately $2.6 million. As the managing member, the Respondent had access to and control of AZID's funds from its inception until it became insolvent.

"14.   Investors received no return on their investment in AZID, including no dividends, interest, or return of principal. The Respondent spent all of the AZID's investors' investment monies.

"15.   In the offering document and the stock ownership document, as well as during oral conversations, the Respondent made written and oral representations to prospective AZID investors to explain the terms of an investment in AZID. The representations·made by the Respondent included material misrepresentations. Additionally, the Respondent failed to provide prospective AZID investors with material information.

## "*Material Misrepresentations*

"16.   *Safety Net*. The Respondent stated that Adair Creek Mine was a safety net and would virtually eliminate the risk of loss to the investors. The Respondent stated that the Adair Creek claims were 'already a proven entity.' However, at the time the Respondent made that statement, the Respondent knew that Adair Creek Mine had never been profitable.

"17. *Independent Laboratory Confirmation of Results of Stage One Testing.* The Respondent stated that, as a protection for the investors, the results of the stage one testing of the Arizona property would be confirmed by an independent laboratory before additional expenses were incurred. However, the Respondent and AZID failed to have an independent laboratory confirm the results of the stage one testing before proceeding to stage two.

"18. *Cash Flow Projection for Mining Year 2001.* In the offering document, the cash flow projection for the mining year 2001 on the Adair Creek Claims was based on a representation that AZID would be processing a minimum of 8,950 cubic yards. However, the Respondent knew that the Forest Service had authorized AZID to process a maximum of only 5,400 cubic yards.

"19. *Transfer of Stricklans' Interest in Adair Creek Claims.* In the offering document, the Respondent stated that William and Marie Stricklan had transferred their production interest in the Adair Creek Claims to AZID. However, the Respondent knew that as of the date of the offering document, the Stricklans had not transferred their interest. The Stricklans did not transfer their interest in the Adair Creek Claims until December 14, 2001. The Respondent failed to inform investors who purchased the membership interest in AZID prior to December 14, 2001, that the Stricklans had not yet entered into a written agreement for the transfer of their production interest in the Adair Creek claims to AZID.

### *"Material Omissions*

"20. *Deficiency Letter.* On May 10, 2001, the Respondent filed the offering document with the State of Idaho, Department of Finance. On May 18, 2001, Nancy C. Ax, an examiner/investigator for the Department of Finance, sent a letter to the Respondent, noting deficiencies in the offering document. Specifically, Ms. Ax stated, '[i]n order to provide adequate disclosure to investors, additional revision and information will be required.' In offering and selling investments to prospective investors in AZID after May 18, 2001, the Respondent failed to inform the prospective investors that the Department of Finance had issued a deficiency letter.

"21. *Mining History of Arizona Property.* The Arizona property was previously mined by NewCut, Inc. John Allison served as NewCut's plant manager. In February 1999, NewCut filed for bankruptcy and the mining operation was shut down. Thereafter, in September, 1999, Al/Far Mining, Inc., owned by Dan Carney, purchased the mining operating through NewCut's bankruptcy case. Mr. Allison was instrumental in having Al/Far Mining purchase the Arizona mining operation through NewCut's bankruptcy case. Additionally, Mr. Allison served as the general manager for Al/Far Mining. By March, 2000, Al/Far Mining shut down the mining operation on the Arizona property. On August 1, 2001, the Respondent, as manager of Western Metallurgical Company, LLC, purchased the Arizona property from Al/Far Mining for $300,000. Again, Mr. Allison was the general manager of the mining operation of the Arizona property. Prior to preparing the offering document and the stock ownership document, the Respondent knew that

the Arizona mining operation was not profitable and had shut down in March, 2000. The Respondent failed to inform prospective investors that the Arizona mining operation was not profitable and had shut down in March, 2000.

### "Idaho

"22. On August 12, 2004, the State of Idaho, Department of Finance, Securities Bureau, filed a complaint against the Respondent and AZID alleging securities fraud and misrepresentation. The State of Idaho sought an injunction and restitution.

"23. On October 13, 2005, the Court entered judgment against AZID in the amount of $1,735,000.00. In the judgment, the Court concluded that AZID violated the Idaho Securities Act and permanently enjoined AZID from engaging in acts, what would constitute violations of the Idaho Securities Act. Additionally, the Court prohibited AZID from selling securities without receiving the prior written consent of the Director of the Idaho Department of Finance. Finally, the Court ordered AZID to pay a money judgment in the amount of $1,730,000 and $5,000 in attorneys fees and costs.

"24. On December 7, 2006, the Court granted summary judgment against the Respondent. In its order, the Court concluded that the Respondent's misrepresentations of fact constituted material misrepresentations in violation of the Idaho Securities Act. Additionally, the Court concluded that the Respondent made material omissions of fact in violation of the Idaho Securities Act. The Court granted summary judgment to the State of Idaho and granted the relief that the State of Idaho sought.

"25. On December 18, 2006, the Court entered judgment and a permanent injunction against the Respondent. Specifically, the Court concluded that the Respondent violated the Idaho Securities Act by misrepresenting and omitting material facts in connection with the offer or sale of a security. Further, the Court permanently enjoined the Respondent from engaging in any acts, practices or courses of business, omissions, and misrepresentations that would constitute violations of the Idaho Securities Act and the Uniform Securities Act. Finally, the Court awarded a money judgment against the Respondent in the total amount of $2,960,000 to include $2,600,000 as restitution to investors injured by the Respondent's violations of the Idaho Securities Act and $360,000 in penalties.

"26. On January 30, 2007, the State of Idaho registered the foreign judgment in the District Court of Douglas County, Kansas. At an aid in execution hearing, the Respondent testified that he has no assets with which to satisfy the judgment. At the time of the disciplinary hearing, the Respondent has paid a total of $500 toward the judgment. The Respondent admitted that he will never be able to satisfy the judgment.

### "Washington

"27. On March 21, 2005, the State of Washington, Department of Financial Institutions, Securities Division, filed a statement of charges and notice of intent to enter an order to cease and desist and to impose fines against the Respondent

and AZID. In the statement of charges, the State of Washington made tentative findings of fact and conclusions of law.

"28. On May 9, 2005, the Respondent waived his right to an adjudicative hearing and agreed to cease and desist his actions.

"29. On July 29, 2005, the State of Washington determined that neither the Respondent nor AZID had the financial ability to pay a fine and entered an agreed order that the Respondent and the AZID would cease and desist from offering or selling securities in the State of Washington.

## "CONCLUSIONS OF LAW

"30. Based upon the Respondent's stipulations and the above findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 4.1, KRPC 8.4(c), and KRPC 8.4(g), as detailed below.

"31. KRPC 4.1 provides:

'In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by or made discretionary under Rule 1.6.'

In this case, the Respondent founded and organized AZID. In behalf of AZID, the Respondent solicited investments from 36 separate individuals. In so doing, the Respondent made material misrepresentations and material omissions. The Respondent violated KRPC 4.1[a] when he made misrepresentations of material fact. Additionally, the Respondent violated KRPC 4.1[b] when he made omissions of material fact. Accordingly, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 4.1.

"32. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved dishonesty when he made material misrepresentations of fact and material omissions of fact. As such, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 8.4(c).

"33. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The Respondent repeatedly made misrepresentations and repeatedly failed to provide material information to investors. Engaging in this conduct adversely reflects on the Respondent's fitness to practice law in Kansas. Thus, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"34. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the po-

tential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"35.   *Duty Violated.* The Respondent violated his duty to the public and the legal profession to maintain his personal integrity.

"36.   *Mental State.* The Respondent knowingly violated his duties.

"37.   *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual, serious financial injury to the investors and the Respondent caused actual, serious injury to the legal profession.

"38.   *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"39.   *Dishonest or Selfish Motive.* The Respondent's misconduct was motivated by dishonesty and selfishness. As the managing member, the Respondent had access and control over the $2.6 million invested by the investors. The Respondent wrongfully used some of the investors' money for his personal benefit, rather than for reasons related to the purposes of the investments. The Respondent spent the money. The Hearing Panel concludes that the misconduct in this case was clearly motivated by dishonesty and selfishness.

"40.   *A Pattern of Misconduct.* The Respondent sought and obtained investments from 36 separate investors. The Respondent engaged in a pattern of misconduct when he repeatedly made misrepresentations to the investors and when he repeatedly failed to inform the investors of material facts. Therefore, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"41.   *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas in 1975. At the time of the misconduct, the Respondent had been practicing law for approximately 25 years. Accordingly, the Hearing Panel concludes that the Respondent has substantial experience in the practice of law.

"42.   *Indifference to Making Restitution.* In February, 2012, and March, 2012, the Respondent made two payments of $250, for a total payment of restitution of $500 on a judgment that includes restitution in excess of $2,600,000. The Hearing Panel concludes that failing to make significant payments on the judgment evidences the Respondent's indifference to making restitution.

"43.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"44.   *Absence of a Prior Disciplinary Record.* The Respondent has not previously been disciplined. The Hearing Panel concludes that the Respondent's lack of a disciplinary record is a mitigating factor in this case.

"45.   In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'5.11 Disbarment is generally appropriate when:

. . . .

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

## "RECOMMENDATION

"46. The Disciplinary Administrator recommended that the Respondent be suspended for a period of two years.

"47. The Respondent requested that he be placed on probation, pursuant to Kan. Sup. Ct. R. 211(g). That rule provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"48. In support of his request for probation, the Respondent contends the issue involving his integrity is not related to the practice of law; it is only relevant to his involvement in business interests. The Respondent further contends that

he has 'found his way back' and is a different person from the one that committed the acts detailed in the complaint.

"49.    The Respondent's plan of probation is not workable, substantial, and detailed. Further, the misconduct, in this case, cannot be corrected by probation. Finally, placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. Accordingly, the Hearing Panel does not recommend that the Court place the Respondent on probation for the violations in this case.

"50.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of two years.

"51.    Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## RESPONDENT'S EXCEPTIONS

On June 29, 2012, the respondent filed exceptions to the final hearing report. See Supreme Court Rule 212(e) (2012 Kan. Ct. R. Annot. 368). In doing so, the respondent did not take exception to the hearing panel's findings of fact or conclusions of law pertaining to the violations of KRPC 4.1 (2012 Kan. Ct. R. Annot. 605) (truthfulness in statements to others); KRPC 8.4(c) (2012 Kan. Ct. R. Annot. 643) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and KRPC 8.4(g) (engaging in any other conduct that adversely reflects on lawyer's fitness to practice law), or to the aggravating factors cited by the hearing panel. As such, those portions of the report are deemed admitted. Supreme Court Rule 212(c) (2012 Kan. Ct. R. Annot. 369) ("Any part of the hearing report not specifically excepted to shall be deemed admitted."). As a result, it is undisputed that the respondent violated the Idaho and Washington securities acts by misrepresenting and omitting material facts in an offer or sale of a security; he repeated this act at least 36 times; these acts involved dishonesty, fraud, deceit, or misrepresentation; he gained control of over $2.6 million of investors' money; he wrongfully used some of that money for his personal benefit rather than for reasons related to the investments; and, at the time of the hearing, he had satisfied only $500 of a $2.6 million judgment.

The respondent did, however, take exception to the hearing panel's recommendation of discipline; its conclusion that his plan

of probation is not workable, substantial, and detailed; its conclusion that probation is not an appropriate discipline in this case; and its legal conclusions regarding three aggravating factors: knowingly violating his duties, acting with misconduct clearly motivated by dishonesty and selfishness, and failing to make significant payments on the judgment which evidences an indifference to making restitution. Instead of the hearing panel's recommendation of a 2-year suspension, the respondent requests he be granted a 1-year period of probation.

In his brief to this court, the respondent does not advance any arguments pertaining to the three aggravating factors with which he previously took exception. Instead, he focuses on the hearing panel's recommendation of suspension and on mitigating factors which he believes should have swayed the panel to recommend probation. Because the respondent does not argue the other exceptions that he had raised, he has abandoned those exceptions. See *In re Ireland*, 294 Kan. 594, 603, 276 P.3d 762 (2012) (a respondent who does not advance arguments in a brief to this court that support exceptions to the final hearing report is deemed to have abandoned the exceptions); *In re Johanning*, 292 Kan. 477, 486, 254 P.3d 545 (2011) (same).

In the arguments that the respondent does advance, he urges this court to reject the hearing panel's recommendation for three reasons, which have been reordered for ease of discussion: (1) The hearing panel erred in its recommendation by disregarding mitigating factors other than the absence of a prior disciplinary record; (2) the respondent's years of public service "support approval of the plan of probation"; and (3) the respondent's plan of probation is "workable, substantial and, detailed" and is appropriate under the circumstances pursuant to Supreme Court Rule 211(g) (2012 Kan. Ct. R. Annot. 350) (requirements of probation).

Before examining these arguments, it is helpful to consider some general principles regarding this court's consideration of disciplinary proceedings. In disciplinary cases, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist, and, if they do, what discipline should be imposed. Attorney mis-

conduct must be established by clear and convincing evidence. *Ireland,* 294 Kan. at 604; *In re Foster,* 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober,* 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis,* 286 Kan. 708, 725, 188 P.3d 1 [2008]). This court considers the hearing panel's findings of fact, conclusions of law, and recommendation to be advisory but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. *In re Frahm,* 291 Kan. 520, 525, 241 P.3d 1010 (2010). Because the panel's recommendation of discipline is only advisory, that recommendation does "not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2012 Kan. Ct. R. Annot. 370); see *In re Freed,* 294 Kan. 655, 661, 279 P.3d 118 (2012); *In re Depew,* 290 Kan. 1057, 1073, 237 P.3d 24 (2010).

*Mitigating Factors*

First, the respondent complains that the hearing panel considered only one mitigating factor—his lack of prior discipline—and failed to consider other mitigating factors under the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards), such as full and free disclosure (ABA Standard 9.32[e]), character or reputation (ABA Standard 9.32[g]), and remorse (ABA Standard 9.32[l]). The respondent also argues that the limited nature of his current law practice should have been considered.

The ABA Standards are guidelines to assist courts in selecting appropriate and uniform discipline, depending upon the facts and the aggravating and mitigating factors of each case. See *In re Keithley,* 252 Kan. 1053, 1057, 850 P.2d 227 (1993); *In re Anderson,* 247 Kan. 208, 212, 795 P.2d 64 (1990), *cert. denied* 498 U.S. 1095 (1991). Neither this court nor the hearing panel is required to cite and discuss every potentially applicable standard. *In re Woodring,* 289 Kan. 173, 186, 210 P.3d 120 (2009). In this case, it is clear from reviewing the panel's final hearing report and the transcript

of the disciplinary hearing that the panel was aware of the facts that the respondent believes mitigate his misconduct. The hearing panel simply did not give those factors the weight the respondent believes they deserve. We agree with the hearing panel that in this case the factors carry such minimal weight they deserved no mention by the panel.

Regarding the respondent's citation to ABA Standard 9.32(e) allowing mitigation if there is full and free disclosure, under the rules of this court all lawyers are required to cooperate with the investigatory process and are required to provide information to the Disciplinary Administrator. See KRPC 8.1 (2012 Kan. Ct. R. Annot. 634) (lawyer in disciplinary matter shall not knowingly make a false statement of material fact, fail to disclose a fact necessary to correct a misapprehension, or knowingly fail to respond to a lawful demand for information). Consequently, to the extent the respondent disclosed information, he simply did what this court demands of all attorneys. See *Woodring*, 289 Kan. at 183 (reasonable not to give attorney credit as a mitigating factor for simply doing what appellate courts expect from licensed attorneys). Additionally, there is reason to question that disclosure was fully given because the respondent indicated at the disciplinary hearing that he had no financial means to satisfy the Idaho judgment. Yet, the respondent had a joint income with his wife in 2009 consisting of approximately $150,000 and admitted that he used investment scheme money to set up several companies, including an investment company for his wife through which she owns rental properties that generate a monthly income of $8,000 to $10,000.

Likewise, given the respondent's paltry effort at making restitution, we find little reason to give weight to the respondent's claim of remorse, which can be a mitigating factor under ABA Standard 9.32(l). The respondent did testify: "I feel bad that they [the 36 investors] lost their money. I mean they were my friends." There is reason to question the sincerity of that remorse, however, when only $500 of $2.6 million has been repaid. Also troubling is the respondent's attitude that he is the victim in this matter. This attitude is reflected in his testimony during a 2010 "Aid in Execution Hearing" in which the respondent was asked whether he was "will-

ing to make any kind of voluntary payments" on the Idaho judgment. The respondent replied: "No. I don't have any money. You understand what this lawsuit did? It absolutely took away my ability to earn money." Instead of recognizing that the respondent's actions caused his inability to continue to pursue his business, the respondent points to the enforcement action as the culprit. This answer and his efforts at restitution weigh heavier than his self-serving statement and lead us to conclude the respondent's remorse is not genuine.

As to the third mitigating factor, the respondent argues that the hearing panel should have recognized his character or reputation as a mitigating factor under ABA Standard 9.32(g). In support of this argument, the respondent contends that "Pastor Willems, Dan Carney, Mark Nelson and Jim Lord . . . solidly confirmed Respondent's character and reputation." In contrast to these witnesses, the hearing panel was faced with evidence that the respondent collected a large sum of money from investors in a venture involving dishonesty, misrepresentation, and material omissions. It is reasonable to conclude that this evidence was more persuasive than the opinions of the respondent's witnesses.

As a final mitigating factor, the respondent argues the hearing panel should have considered the limited nature of his current law practice—whiplash injuries and mild traumatic brain injuries—because there is no risk of a recurrence of the respondent's misconduct. We find no solace in the limited nature of the respondent's practice. The core of his misdeeds—misrepresentation and dishonesty—is not unique to securities law. It can impact all aspects of the practice of law. Even though the respondent contends he has made profound changes in his business life, has "recovered his moral compass," and "is no longer driven by his dream of operating a gold mine," the hearing panel justifiably focused on the respondent's pattern of misconduct in this case, its conclusion that his actions were motivated by dishonesty and selfishness, and the respondent's seeming indifference to making restitution.

In summary, this court, like the hearing panel, gives little, if any, weight to the mitigating factors asserted by the respondent.

*Public Service*

In addition to the mitigating factors discussed above, the respondent argues that his years of public service warrant the lighter discipline of probation. Although he presents this argument as a separate issue, it is, in essence, an extension of the mitigating factor of character or reputation.

At the disciplinary hearing, the respondent testified to serving as Assistant Cherokee County Attorney for approximately 6 months after graduating from law school in 1975. Then, in 1976, he became the City Attorney for Frontenac, Kansas, and held that position for a period of approximately 4 years, during which he also served in the Kansas House of Representatives. The respondent then served as the Crawford County Attorney for approximately 2 years, until he entered the oil business in 1981. Later, after the respondent got out of the oil business, he entered the gold mining business.

As noted by the Disciplinary Administrator, other than the respondent's statements that he held various public service jobs, he does not explain how these jobs or the duties associated with these jobs relate to his plan of probation. This dated public service does not give great weight to the respondent's request for probation for acts of misconduct committed approximately 20 years after the respondent last served in public office.

*The Respondent's Plan of Probation*

In arguing the third issue, the respondent asserts the hearing panel should have recommended the plan of probation that he timely submitted as required by Supreme Court Rule 211(g).

Probation may be granted in limited situations when three requirements have been met. First, the respondent must develop a workable, substantial, and detailed plan of probation before the hearing. Next, there must be unique circumstances or the respondent must demonstrate an exceptional case with persuasive mitigating factors. Finally, the plan of probation must serve the best interests of both the legal profession and the citizens of Kansas. *In re Anderson*, 278 Kan. 512, 516, 101 P.3d 1207 (2004); *In re Conwell*, 275 Kan. 902, 911, 69 P.3d 589 (2003). The hearing panel

concluded that the respondent's plan did not meet any of these requirements. We agree.

Generally, this court has been wary of granting probation where the underlying misconduct involves dishonesty. No level of supervision can assure public safety from misrepresentation or fraud. See Supreme Court Rule 211(g)(1) (2012 Kan. Ct. R. Annot. 351) ("The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court."); Supreme Court Rule 211(g)(3)(iii) (2012 Kan. Ct. R. Annot. 352) ("The Hearing Panel shall not recommend . . . probation unless: . . . the misconduct can be corrected by probation.").

The respondent suggests that accountability can be obtained through several steps. First, he proposes monthly financial reporting regarding his client trust account and operating account. Yet, as the Disciplinary Administrator aptly notes, an audit of law firm accounts in 2001 would not have uncovered the investment scheme that resulted in this discipline—a scheme that was not accounted for through a law firm. Second, the respondent proposes he would attend an additional 9 hours of continuing legal education in law practice management and ethics. However, the respondent's discipline does not stem from a failure to understand law practice management or the proper handling of a trust account; it stems from a breach of the core value of honesty, a value that cannot be taught or rehabilitated in 9 hours of education. Third, the respondent proposes that he would meet weekly with a spiritual and personal mentor, Pastor Peiter Willems of the Mustard Seed Church in Lawrence, Kansas. This step, while laudable, does not provide the type of accountability required for a probation plan to past muster. The record reflects that Pastor Willems was a friend and spiritual mentor to the respondent during the time period when the respondent acted deceitfully in his dealings with the 36 investors. Such a relationship is not sufficient to meet the requirements of Rule 211(g) under the circumstances of this case. Finally, the respondent proposes supervision by an attorney who practices in the state of Missouri, where the respondent is not licensed. Even though the respondent promises that "[h]is practice will be limited

to Kansas claims, Kansas clients," we agree with the panel that such a plan is not workable.

As to the second requirement for a plan of probation to be approved, we do not accept the respondent's effort to pigeonhole his conduct into the unique circumstances of a mining venture. The dishonest actions of the respondent were, at least in part, selfishly motivated, and selfish motivation can manifest itself in all areas of practice.

Finally, given the nature of the respondent's actions we cannot conclude that probation would be in the best interests of the legal profession and the citizens of Kansas. To argue it would be, the respondent cites *In re Kershner*, 250 Kan. 383, 392, 827 P.2d 1189 (1992), a case in which this court publically censured an attorney following four felony convictions for violating Kansas securities statutes. The respondent's reliance on this case is misplaced. Each disciplinary sanction is based on the specific facts and circumstances of the violations and the aggravating and mitigating circumstances presented in the case. Because each case is unique, past sanctions provide little guidance. *In re Bishop*, 285 Kan. 1097, 1108, 179 P.3d 1096 (2008). That is illustrated by comparing the court's analysis in *Kershner* with the facts of this case. There, the court noted that "Kershner's convictions for violating the securities act were not acts of violence, dishonesty, or a breach of trust or a serious interference with the administration of justice. In addition, the district judge determined there were no victims to compensate because of Kershner's illegal act." *Kershner*, 250 Kan. at 392. Here, there were acts of dishonesty, a serious breach of trust, and 36 victims who suffered a total of $2.6 million in damages.

In summary, we agree with the hearing panel that the plan of probation does not meet the requirements of Rule 211(g).

*Recommended Discipline*

We turn, then, to the panel's recommendation that the respondent be suspended from the practice of law for a period of 2 years.

As already noted, in determining its recommendation of discipline, the hearing panel cited ABA Standard 5.11 (disbarment) and ABA Standard 7.2 (suspension). In his brief before this court, the

respondent argues that the hearing panel should have considered other ABA Standards that he argues suggest his discipline does not warrant suspension. He cites ABA Standard 5.12, which states suspension is appropriate when a lawyer knowingly engages in criminal conduct, and ABA Standard 8.2, which states suspension is appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct. In essence, he argues that because he was not convicted of a crime and had not been previously disciplined for the same or similar conduct, these standards do not apply to him and suspension would be inappropriate.

We do not agree with the respondent's parsing of ABA Standard 5.12 because commentary to that standard indicates: "As in the case of disbarment, a suspension can be imposed even where no criminal charges have been filed against the lawyer." Such charges may have been warranted in this case. Further, other ABA Standards calling for suspension or disbarment apply to the facts of this case, including ABA Standard 5.11 and Standard 7.2, which were cited by the hearing panel in the final hearing report. See *In re Thomas*, 291 Kan. 443, 454, 241 P.3d 104 (2010); *In re Robertson*, 256 Kan. 505, 507-08, 886 P.2d 806 (1994).

ABA Standard 5.11 states that "[d]isbarment is generally appropriate when . . . (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." The facts of this case fall under that standard. The respondent knowingly made misrepresentations and material omissions involving 36 investors in six states. He raised approximately $2.6 million and squandered all of the investors' money. The investors received no return on their investment, including no dividends, interest, or return of principal. Even though the State of Idaho issued a deficiency letter to the respondent just 8 days after the offering was filed, the respondent failed to act and cure that deficiency. In making the misrepresentations and in failing to take action to mitigate potential losses, the respondent acted both personally and as a fiduciary in a corporate capacity, and such actions seriously adversely reflect on the respondent's fitness to practice law. The facts

show a pattern of misrepresentation and omissions and a severity of injury so severe that a majority of this court concludes disbarment is appropriate. A minority of the court would impose a less severe sanction.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Douglas Lee Baker be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2012 Kan. Ct. R. Annot. 294).

IT IS FURTHER ORDERED that Douglas Lee Baker comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397), as amended December 1, 2012.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.