IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,621

In the Matter of TARISHAWN D.D. MORTON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held September 13, 2023. Opinion filed December 1, 2023. Published censure.

*Gayle B. Larkin*, Disciplinary Administrator, argued the cause and was on the brief for the petitioner.

*Tarishawn D.D. Morton*, respondent, argued the cause and was on the brief pro se.

PER CURIAM: This is an attorney-discipline proceeding against the respondent, Tarishawn D.D. Morton, of Colorado Springs, Colorado. Morton received her license to practice law in Kansas in July 2016.

On June 16, 2022, the Disciplinary Administrator's office filed a formal complaint against Morton alleging violations of the Kansas Rules of Professional Conduct (KRPC). Morton answered the formal complaint on July 15, 2022.

On August 23, 2022, Morton appeared pro se at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys. After the hearing, the panel determined that Morton had violated KRPC 7.1(a) (communication concerning a lawyer's services) (2023 Kan. S. Ct. R. at 423), KRPC 8.1 (bar admission and disciplinary matters) (2023 Kan. S. Ct. R. at 431), KRPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation) (2023 Kan. S. Ct. R. at 433), and KRPC 8.4(g) (conduct that

1

adversely reflects on the lawyer's fitness to practice law) (2023 Kan. S. Ct. R. at 433). The panel set forth its factual findings, legal conclusions, and recommended discipline in a final hearing report. The relevant portions of that report are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

"The hearing panel finds the following facts, by clear and convincing evidence:

"8.     The respondent is a Colorado resident. She has not passed the Colorado bar examination, but scored high enough on the Uniform Bar Examination in Colorado to apply for and obtain a Kansas license to practice law under Supreme Court Rule 709A, and she was admitted on July 8, 2016. Respondent lives in Colorado and rents an office in Overland Park, Kansas, with a mail drop and a conference room for use on those occasions when she travels to Kansas. According to respondent's testimony, she has never lived in Kansas, and has visited the Kansas office approximately ten times in connection with her practice.

"*Website*

"9.     In November 2020, Brandan Davies of Roth Davies, LLC, discovered that the respondent had copied significant portions of content from his firm's website and pasted that content onto her website, www.attorneytmorton.com. In at least one place, the respondent included Roth Davies' name and telephone number on her website.

"10.    As a result of the respondent's actions, when the term 'Roth Davies' was included in an Internet search, the respondent's website appeared in the results.

"11.    On November 17, 2020, Mr. Davies sent the respondent a letter by certified mail and an email message, asking the respondent to remove the Roth Davies content from her website. The initial email provided:

2

'It has come to my attention that over 20% of your website (https://www.attorneytmorton.com/) is a direct copy or ever-so-slightly altered content from our law firm's website. In fact, some of our firm's name and telephone number is [*sic*] currently on your site due to the poorly executed copy paste job. We have spent a lot of time and money in [*sic*] developing our site and copying the site has affected our search rankings adversely. Kindly remove any [*sic*] of the duplicate content from your site. Our website company will be running a report Friday to check your site for duplicate content.'

The respondent did not respond to Mr. Davies' communications. A week later, Mr. Davies again demanded that the respondent remove the duplicate content by email message. Again, the respondent did not respond to Mr. Davies' communication. Respondent asserts that she did not receive Mr. Davies' communications.

"12.   On January 11, 2021, Mr. Davies filed a complaint against the respondent with the Office of the Disciplinary Administrator, after which respondent deactivated her website.

"13.   As of July, 2021, it was discovered that the respondent had reactivated her former website, though it has now been substantially reduced to address the issues discussed below.

"14.   The 2020-2021 website contained the following intentional misrepresentations by the respondent:

a.   The website contained copied substantial portions of the Roth Davies website, including a number of references to the firm of Roth Davies, that firm's telephone number, areas of expertise, and courts where the firm practices, as well as several case law summaries developed by Roth Davies, making it appear that the work was the product of respondent's labors and expertise. It is unknown what and how many clients (if any) were misled into believing there was some

3

identity between respondent and Roth Davies, and how many clients (if any) were deterred from proceeding further after seeing the confusion between the two firms;

b. On the website, the respondent identified herself as an experienced attorney practicing in the areas of criminal defense, sex crimes, and personal injury. However, the respondent had limited experience practicing law. In fact, according to the respondent's 2019 Colorado 'on-motion' bar application and according to the respondent's supplemental response to the complaint and Kansas bar application, the respondent worked full-time for El Pueblo Boys and Girls Ranch and practiced law during the evenings and weekends; and

c. On the website, the respondent made it appear that she was a member of the Johnson County Bar Association (JCBA), the Kansas Bar Association (KBA), and the American Bar Association (ABA). The respondent's statements regarding her memberships with bar associations were false.

i. The respondent has not been a member of the JCBA since 2017.

ii. The respondent was a complimentary member of the KBA immediately after her admission in 2016. However, when her free membership expired on June 30, 2017, she did not join the KBA.

iii. The respondent has been a member of the ABA, off and on, during her six-year career. But, in 2020, when the website was live, the respondent was not a member of the ABA. The respondent has not been a member of any section of the ABA since 2018.

iv. Contrary to the information the respondent included on her website, in response to question 6 on the respondent's 2019 'on-motion' Colorado bar application, the respondent stated that she had never been a member of a bar association.

4

d. On the website, the respondent stated that she received an A/V rating from the Martindale-Hubbell attorney-rating service. Respondent has not received an A/V rating from Martindale-Hubbell.

e. The website claimed respondent was experienced in criminal cases, whereas in her response to the complaint, she admitted she had no criminal cases in November, 2020, and had handled only one before that.

"*Kansas Bar Application*

"15. On March 2, 2016, the respondent applied to take the Kansas bar examination. The application form required the respondent to disclose ten years of employment history. Because the respondent filed her Kansas bar application on March 2, 2016, she was required to disclose her employment history from March 2, 2006, through March 2, 2016.

"16. The respondent's employment history included on her Kansas bar application varied from the employment history reported on the Colorado bar applications discussed below. Most importantly, on the respondent's Kansas bar application, the respondent failed to disclose her employment with the Boys and Girls Club. As a result, when considering the respondent's bar application, the Board of Law Examiners in Kansas was unaware, and unable to inquire to determine, that she had been terminated from her employment with Boys and Girls Club for misconduct.

"17. The panel concludes that, despite her protestations to the contrary, respondent intentionally omitted, in her Kansas bar application, reference to her erstwhile employment with the Boys and Girls Club, as she managed to recall and list her employment with the temporary agency which placed her at the Boys and Girls Club, with its dates immediately prior to her actual employment with the Boys & Girls Club, while omitting that later employment. This intentional misrepresentation kept the Kansas Board of Law Examiners from checking into that employment, which likely would have led to the disclosure of respondent's fraud during that employment, discussed below.

5

"18.   In addition to failing to disclose her employment with the Boys and Girls Club on the Kansas bar application, the respondent also failed to disclose employment with Colorado State University-Pueblo and Crystal Specialties, Inc.

"19.   In her Kansas bar application, respondent stated 'none' in response to the question whether she had ever received any licenses, when in fact, she had been licensed as a special education director and as a temporary teacher.

"*Boys and Girls Club*

"20.   Respondent was employed by the Boys and Girls Club of Colorado first as an independent contractor through a temporary agency, and then on September 10, 2007 as a permanent employee. Her position at Boys and Girls Club was Controller, at an annual salary of $35,000.

"21.   In December, 2007, respondent went to her supervisor at Boys and Girls Club, James Sullivan (the Executive Director) and presented him for his signature a Boys and Girls Club check for $3,000.00, which respondent had prepared for delivery to Sam's Club, a supplier to the Boys and Girls Club. Mr. Sullivan signed the check and returned it to respondent.

"22.   The respondent then went to Sam's Club and cashed the $3,000 check at Sam's Club which was issued as a payment of the Boys and Girls Club's bill with Sam's Club. Respondent had Sam's Club apply $2,617.18 to the Boys & Girls Club bill, and spent the remaining $382.82 on personal items. Further, the respondent used the Boys and Girls Club tax-exempt account information to avoid paying sales tax on the personal items she purchased from Sam's Club. To date, respondent has never reimbursed the Boys and Girls Club the $382.82 which she spent on personal items.

"23.   While a police report was filed in connection with this theft, respondent was never charged or convicted.

"24.   On three occasions during her employment with the Boys and Girls Club, as the Controller, the respondent paid herself her full-time salary as well as wages

6

claimed as hourly employment. She overpaid herself a total of $4,038.35 by this method. To date, the respondent has not reimbursed the Boys and Girls Club the $4,038.35 that she overpaid herself. Respondent was never charged for nor convicted of this theft.

"25.    Respondent was terminated from her employment at Boys & Girls Club on December 26, 2007. She took her personnel file with her when she left, and when she returned the file upon demand of her former employer, some documents were missing.

"26.    Again, had respondent's employment with Boys and Girls Club been disclosed on her application for the Kansas bar, these facts may well have been discovered, which likely would have had a detrimental effect on the decision of the Board of Law Examiners.

"*Colorado Bar Applications*

"27.    In 2014, 2015, and 2019, the respondent filed a total of four bar applications with the State of Colorado. On each of the applications, the respondent disclosed her prior employment with the Boys and Girls Club (which she failed to disclose in her Kansas bar application, showing she was aware and recalled it). While the respondent indicated that she was disciplined and left the position involuntarily, she inaccurately explained that she left the position voluntarily and was disciplined only after she voluntarily resigned. She stated that she was investigated for mishandling money. She stated that she 'hired an attorney, out of fear and to protect [her] rights, [and the attorney] found out that nothing ever came of [the] matter.'

"28.    On her 2019 Colorado 'on-motion' bar application, the respondent listed Debbie Uhl, registration clerk for the Kansas Office of Judicial Administration, and the Honorable David Hauber, Johnson County District Court Judge, as supervisors of her solo practice. While the respondent was never employed by Judge Hauber or the Office of Judicial Administration, respondent's exhibit A shows that a Colorado official asked the respondent to provide the name and contact information of a third[-]party individual, such as a judge or other professional colleague who could confirm her solo practice. The respondent provided the names of Judge Hauber and Debbie Uhl in response.

7

"29.   While her 2019 Colorado 'on-motion' bar application was pending, the complaint which gave rise to this case was filed against the respondent. The respondent failed to notify the Colorado admissions authorities that the complaint was filed against her, as required by the statement of verification portion of the bar application.

"30.   On her 2019 Colorado 'on-motion' bar application, the respondent stated that she had never been a member of a bar association. However, the respondent was a member of the Johnson County Bar Association and the Kansas Bar Association from 2016 to 2017 and the respondent was also previously a member of the American Bar Association.

"31.   Finally, on the Kansas bar application, the respondent disclosed that she worked as a special education director for El Pueblo Boys and Girls Ranch, a mental health and substance abuse treatment facility for adolescents in Pueblo, Colorado; the respondent did not disclose that employment on her 2019 Colorado 'on-motion' bar application.

"*Conclusions of Law*

"32.   Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 7.1, 8.1, and 8.4(c) and (g), as detailed below.

"KRPC 7.1(a)

"33.   KRPC 7.1(a) provides:

'A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:

(a)   contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading.'

8

"34.   The respondent violated KRPC 7.1 when she published a website containing materially false information, including masses of information copied from the Roth Davies website (leading searchers to land on her website when actually searching for Roth Davies), her bar association memberships, her alleged Martindale-Hubbell A/V rating, and her alleged experience, particularly in motorcycle and wrongful death cases. This was exacerbated when, having removed the website upon receipt of the complaint in this matter, she put the offending website back up within a few months thereafter. As such, the hearing panel concludes that the respondent violated KRPC 7.1(a).

"KRPC 8.1

"35.   Rule 8.1 provides:

'An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a)   knowingly make a false statement of material fact; or

(b)   fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.'

"36.   In the present case, respondent intentionally failed to include her employment with the Boys and Girls Club, as well as her employment with Crystal Specialties and Colorado State University-Pueblo in her application for admission to the Kansas bar.

"37.   Additionally, respondent failed to disclose a number of matters, and mis-stated a number of facts to the Colorado bar authorities in her several applications to that bar, including:

9

a. that she voluntarily quit her employment with Boys & Girls Club;

b. that she had not been a member of any bar associations; and

c. failing to disclose that the complaint had been filed in this matter before the Kansas State Board for Discipline of Attorneys.

"38. Therefore, the panel concludes that respondent violated Rule 8.1.

"KRPC 8.4(c)

"39. Rule 8.4(c) provides that it is professional misconduct for a lawyer to 'engage in conduct involving dishonesty, fraud, deceit or misrepresentation.'

"40. The panel concludes that the respondent engaged in conduct that involved dishonesty, fraud, deceit and misrepresentation when she:

a. Failed to disclose in her application to the Kansas bar authorities her employment with Boys & Girls Club;

b. Failed to disclose in her application to the Kansas bar authorities her defrauding of Boys and Girls Club of $382.82 at Sam's Club;

c. Failed to disclose in her application to the Kansas bar authorities her double-payment to herself of $4,038.35 as an employee of Boys and Girls Club, claiming both salary and hourly wages;

d. Included false information on her website, and then after receiving the complaint and taking it down, re-publishing that website, including information taken directly from the Roth Davies website, claiming bar association memberships, and claiming a rating of A/V from Martindale-Hubbell; respondent's website also falsely claimed that she was an 'experienced' lawyer, and could handle motorcycle cases and wrongful death cases, whereas she has

10

handled no such cases. Indeed, the website claimed respondent was experienced in criminal cases, whereas in her response to the complaint, she admitted she had no criminal cases in November, 2020, and only one before that;

  e. Failed to disclose her employment with Crystal Specialties and Colorado State University-Pueblo;

  f. Claimed to the Colorado bar that she had voluntarily quit her employment at Boys and Girls Club;

  g. Failed to disclose to the Colorado bar that she had been a member of bar associations;

  h. Failed to disclose to the Colorado bar that an ethics complaint had been filed against her in Kansas; and

  i. Failed to disclose to the Colorado bar that she had been employed by El Pueblo.

"41. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(g)

"42. Rule 8.4(g) provides that it is professional misconduct for a lawyer to 'engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

"43. The respondent engaged in conduct that adversely reflects on her fitness to practice law when she:

  a. Failed to disclose her employment with Boys & Girls Club in her application to the Kansas bar authorities;

11

b. Failed to disclose her defrauding of Boys and Girls Club of $382.82 at Sam's Club in her application to the Kansas bar authorities;

c. Failed to disclose her double-payment of $4,038.35 as an employee of Boys and Girls Club, claiming both salary and hourly wages in her application to the Kansas bar authorities;

d. Included false information on her website, and then after receiving the complaint and taking it down, re-publishing that website, including information taken directly from the Roth Davies website, claiming bar association memberships, and claiming a rating of A/V from Martindale-Hubbell; respondent's website also falsely claimed that she was an 'experienced' lawyer, and could handle motorcycle cases and wrongful death cases, whereas she has handled no such cases. Indeed, the website claimed respondent was experienced in criminal cases, whereas in her answer to the complaint, she admitted she had no criminal cases in November, 2020, and only one before that;

e. Failed to disclose her employment with Crystal Specialties and Colorado State University-Pueblo;

f. Claimed to the Colorado bar that she had voluntarily quit her employment at Boys and Girls Club;

g. Failed to disclose to the Colorado bar that she had been a member of bar associations;

h. Failed to disclose to the Colorado bar that an ethics complaint had been filed against her in Kansas; and

i. Failed to disclose to the Colorado bar that she had been employed by El Pueblo.

"44. The hearing panel concludes that the respondent violated KRPC 8.4(g).

12

"45. On August 9, 2022, respondent timely submitted 'Respondent's Rule 227 Proposed Probation Plan.' The proposed plan does not suggest any supervision by any experienced lawyer. The panel finds the proposed plan to be very general and vague, with few specific promised corrections and activities.

"46. The panel recognizes that the 'court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.' *In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013); *In re O'Neill*, 285 Kan. 474, [481,] 172 P.3d 1179, (2007) ('["]Dishonest conduct cannot be corrected by probation.["]').

"47. Additionally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. *In re Mason*, 308 Kan. 1105, 427 P.3d 40 (2018).

"48. Further, applying Rule 227, the panel finds that the respondent's proposed plan is not workable, substantial, or detailed, particularly given the remote nature of her practice, living in Colorado while maintaining a drop-box office in Overland Park. *In re Harrington*, 296 Kan. 380, 293 P.3d 686 (2013) (probation plan not adopted where it is not workable, substantial, and detailed); *In re Baker*, 296 Kan. 696, 294 P.3d 326 (2013) (same).

"49. The panel has found several instances of intentional misrepresentations and fraud on the part of the respondent. Accordingly, the hearing panel concludes that probation is not appropriate in this case and the respondent's plan is insufficient in any event.

"*Recommended Discipline*

"50. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be

13

considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

    a.  *Duty Violated*. The respondent violated her duty to the bar and the public by all the misconduct enumerated above.

    b.  *Mental State*. The respondent intentionally violated her duty.

    c.  *Injury*. As a result of the respondent's misconduct, the respondent caused injury and harm to the justice system and the practice of law in this State.

"*Aggravating and Mitigating Factors*

"51.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

    a.  *Dishonest or Selfish Motive*. The respondent committed a number of acts of fraud and intentional misrepresentation. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

    b.  *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 7.1 (advertising); 8.1 (bar admissions); 8.4(c) (dishonesty, fraud, deceit, misrepresentation); and 8.4(g) (adversely reflects on lawyer's fitness). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

    c.  *Refusal to Acknowledge Wrongful Nature of Conduct*. The respondent has refused to acknowledge any wrongdoing of any kind, and maintains denials and excuses, even when confronted with proof. Accordingly, the hearing panel concludes that the respondent refused to acknowledge the wrongful nature of her conduct.

14

"52.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present, though neither the Disciplinary Administrator nor the respondent argued for any.

   a.   *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

   b.   *Inexperience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in 2016. Thus, the respondent is inexperienced in the practice of law.

"*Application of Standards*

"53.   In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.11   Disbarment is generally appropriate when:

   (a)   a lawyer engages in serious criminal conduct a necessary element of which includes intentionally [*sic*] interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses;

   (b)   a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious adversely reflects on the lawyer's fitness to practice.

'5.12   Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard

15

5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

'5.13 Reprimand is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.'

"*Recommendation of the Parties*

"54. The disciplinary administrator recommended that the respondent be disbarred. The respondent made no recommendation on discipline, other than to plead for the mercy of the panel.

"*Discussion*

"55. While the panel is concerned about the multiple acts of fraud, deceit and misrepresentation, particularly in her application which led to her becoming a member of the bar of this court, and some of which could be considered criminal, respondent was never charged or convicted.

"56. However, the panel does not find that respondent is guilty of the 'serious criminal conduct' required to justify a disbarment. See, e.g. *In re Richardson*, 268 Kan. 831, 833, 1 P.3d 328 (2000) (conviction of three felonies for fraud—disbarred); *In re Minneman*, 287 Kan. 477, 196 P.3d 1156 (2008) (federal conviction for income tax fraud—disbarred).

"57. Therefore, the panel concludes that indefinite suspension be imposed, with the condition that, upon her re-application for reinstatement, respondent submit a workable, substantial and detailed plan for returning to the practice with, at least, the following provisions:

16

    a.   Supervision by an experienced, specifically-named, senior Kansas lawyer, with regular monitoring of practice, advertising, and case handling, and regular reporting to the Disciplinary Administrator;

    b.   A detailed plan of office administration, client intake and communication, and regular attendance at the Kansas office of the respondent, to ensure that Kansas clients receive adequate communication and representation; and

    c.   Additional five hours of approved continuing legal education per year on office administration, law office management, and professional responsibility.

"*Recommendation of the Hearing Panel*

"58.   Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended with the conditions listed above for readmission to the practice.

"Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

Once a disciplinary-hearing panel finds misconduct and recommends any discipline besides informal admonition (the least serious form of discipline under our rules), the matter proceeds to our court. See Supreme Court Rule 226(b) (2023 Kan. S. Ct. R. at 282). At that stage, the respondent and the Disciplinary Administrator may file "exceptions," which are formal objections to the hearing panel's factual findings or legal conclusions. See Supreme Court Rule 201(h) (2023 Kan. S. Ct. R. at 251) (defining "exception"). A party must file an exception to a factual finding or a legal conclusion to preserve the issue for our review. Supreme Court Rule 228(e)(1) (2023 Kan. S. Ct. R. at 288). If a party files no exceptions, then we consider that party to have admitted the factual findings and the legal conclusions in the final hearing report. Rule 228(g).

17

Whether or not the parties file exceptions or briefs, we hold oral argument in disciplinary cases. See Rule 228(i). Following several rounds of briefing not relevant to the issues here, we agreed to hold argument by videoconference. We did so in September 2023. Both parties appeared. Morton acknowledged making mistakes, and she expressed a desire to continue practicing law in Kansas. The Disciplinary Administrator continued to press for disbarment.

DISCUSSION

In many of the disciplinary cases we hear, neither the respondent nor the Disciplinary Administrator files exceptions. As a result, we often adopt the panel's findings of fact and its conclusions of law. See *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020) ("'When a respondent does not take exception to a finding it is deemed admitted.'"). In those cases, our task is to decide the appropriate discipline after considering the admitted rule violations, the respondent's state of mind, any resulting injury, and the existence of aggravating or mitigating factors. See, e.g., *In re Barnds*, 317 Kan. 378, 398, 404, 530 P.3d 711 (2023) (citing ABA Standards for Imposing Lawyer Sanctions).

But this case is more complicated. Morton filed exceptions to most of the panel's factual findings and all its legal conclusions. Thus, the panel's findings and conclusions are not deemed admitted. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017). And we must determine whether attorney misconduct has been established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022). This requires us to examine the panel's findings and applicable professional-conduct rules in more detail.

18

Across her exceptions, briefing, and oral argument, Morton raises four main arguments. First, Morton contends that we lack subject-matter jurisdiction to discipline her for conduct related to her 2019 Colorado bar application. Second, Morton argues that the Disciplinary Administrator and the hearing panel violated her federal due-process rights. Third, Morton maintains that there is no clear and convincing evidence supporting the panel's conclusions that she violated KRPC 7.1, 8.1, and 8.4(c) and (g). Finally, Morton proposes that the appropriate discipline is probation or published censure if we uphold the rule violations.

We address these arguments in turn below. We conclude that our court has subject-matter jurisdiction to discipline Morton for conduct related to her 2019 Colorado bar application and that Morton inadequately briefed her due-process challenges. But we agree with Morton that the facts and law do not support many violations the panel found. We also agree with her that the discipline recommended by the Disciplinary Administrator (disbarment) and the hearing panel (indefinite suspension) is too severe. Giving due consideration to the violations supported by clear and convincing evidence, Morton's state of mind, the injury she caused, and the applicable aggravating and mitigating circumstances, we conclude that the appropriate discipline is a censure to be published in the Kansas Reports.

But before explaining our reasoning, we must briefly address the supplemental documents Morton filed the evening before oral argument. Those documents included a corrected opening brief, letters of support, and a list of continuing-legal-education courses that Morton had recently completed. Although we need not discuss the delays and motion practice leading up to oral argument, we twice denied Morton's request to file a corrected brief during that period. Further, under Rule 228(c), the record in an attorney-discipline proceeding before our court consists of the record before the hearing panel, the hearing transcript, and any exhibits a party offered for admission into evidence at the panel hearing. The rule contains no provision allowing a party to supplement the record

with letters of support or other documents the panel did not consider. See Rule 228(e)(1) (2023 Kan. S. Ct. R. at 288). We do not suggest that supplementing a disciplinary-proceeding record is never warranted. But it was improper to do so without leave of the court and on the eve of oral argument. We decline to consider Morton's corrected brief and supplemental documents when resolving the issues before us.

I.  *The Kansas Supreme Court Has Subject-Matter Jurisdiction to Discipline an Attorney Licensed in Kansas for Misrepresentations Made While Seeking Bar Admission in Another Jurisdiction*

Morton first insists that our court lacks subject-matter jurisdiction to discipline her for statements made on her 2019 Colorado bar application. The hearing panel found that Morton misrepresented facts on that application and that she failed to inform Colorado admissions authorities of the pending disciplinary case against her in Kansas. The panel relied on those facts to conclude that Morton violated KRPC 8.1 and 8.4(c) and (g). But Morton contends that only the Colorado Supreme Court has the authority to investigate and sanction her for that conduct.

We disagree. Article 3, § 1 of the Kansas Constitution vests the Kansas Supreme Court with authority to administer the judicial department of Kansas government and to exercise judicial power. This power includes maintaining high standards for the practice of law and disciplining those who fail to meet such standards. *In re Crandall*, 308 Kan. 1526, 1538, 430 P.3d 902 (2018). Thus, under Supreme Court Rule 202(b), attorneys admitted to practice law in Kansas are "subject to the jurisdiction of the Kansas Supreme Court and the Board [for Discipline of Attorneys]." (2023 Kan. S. Ct. R. at 253). And KRPC 8.5, which provides that a Kansas lawyer "is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere," specifically contemplates subject-matter jurisdiction even if the lawyer is practicing outside Kansas. (2023 Kan. S. Ct. R. at 434). Our precedent likewise confirms that subject-matter jurisdiction exists even when the misconduct occurs outside Kansas. See *In re Crandall*, 308 Kan. at 1539-

20

40 ("[M]isconduct in another jurisdiction 'still reflects on the ability of that lawyer to practice' in the licensing jurisdiction.") (quoting Rotunda & Dzienkowski, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility § 8.5-1, at 1433 [2017]). Thus, we have subject-matter jurisdiction to consider whether Morton's out-of-state conduct—including statements and omissions in her Colorado bar application—violated Kansas' professional-conduct rules.

II. *Morton Has Not Established That Her Federal Due-Process Rights Were Violated During the Proceedings Before the Hearing Panel*

Morton next argues that her federal due-process rights were violated during the panel proceedings in five ways. See *In re Harrington*, 305 Kan. 643, 657, 385 P.3d 905 (2016) ("[T]he Due Process Clause of the United States Constitution applies to lawyer disciplinary proceedings."). We conclude that Morton has not adequately briefed any of the issues, so we decline to resolve them on the merits. See *In re Bishop*, 285 Kan. 1097, 1106, 179 P.3d 1096 (2008) ("[T]he general rule [is] that an issue not briefed on appeal is deemed waived or abandoned."); *In re Coggs*, 270 Kan. 381, 396, 14 P.3d 1123 (2000) ("We, therefore, decline to consider the two issues raised but not briefed."). We briefly explain why below.

Morton first argues that the panel violated her federal due-process rights when it denied her motion to continue the formal hearing. Morton had asked for the continuance so she could subpoena records from the Boys & Girls Club and Sam's Club. To establish a procedural due-process violation, Morton would need to show that she was denied a specific procedural protection to which she was entitled. See *In re Landrith*, 280 Kan. 619, 640, 124 P.3d 467 (2005). To decide the procedural protections that must accompany the deprivation of a particular property right, we weigh several factors:

> "(1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest
> through the procedures used and the probable value, if any, of additional or substitute

21

procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that the additional or substitute procedures would entail." 280 Kan. at 640 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]).

Moreover, respondents in disciplinary proceedings have the burden to show that they were prejudiced by any failure in the proceedings. See Supreme Court Rule 239(b) (2023 Kan. S. Ct. R. at 312) (deviation from disciplinary procedures not grounds for reversal unless it causes prejudice). Morton simply asserts a federal due-process violation without addressing any of this applicable framework. See, e.g., 280 Kan. at 640 (applying procedural due-process framework to disciplinary-panel proceeding).

Morton next argues that the Disciplinary Administrator violated her due-process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by objecting to a continuance and by failing to request and obtain exculpatory evidence on her behalf. Morton does not explain why *Brady* applies to a disciplinary proceeding (*Brady* is a criminal-law rule), why the Disciplinary Administrator had a duty to obtain evidence on Morton's behalf, or why the materials she sought were exculpatory.

Morton then argues that the admission of Boys & Girls Club payroll records and a receipt from Sam's Club violated the rules of evidence. See Supreme Court Rule 222(e)(1) (2023 Kan. S. Ct. R. at 277) (disciplinary hearing is governed by the Kansas rules of evidence). But Morton did not object to the admission of these exhibits. See K.S.A. 60-404; *State v. Sharp*, 289 Kan. 72, 100, 210 P.3d 590 (2009) ("'As a general rule, a party must make a timely and specific objection to the admission of evidence in order to preserve the issue for appeal.'"). And she merely asserts, without explaining, that the admission of the evidence violated K.S.A. 2022 Supp. 60-245a(b) (a civil-procedure statute governing the subpoena of nonparty business records) and K.S.A. 2022 Supp. 60-460(m) (an evidence statute that provides a hearsay exception to business entries).

Morton then argues that the Disciplinary Administrator "failed in her duties to investigate." But Morton does not explain the source of these duties. Nor does she explain their substance.

Finally, Morton argues that the panel erred by refusing to admit Exhibits I and J that she offered at trial. Those exhibits consist of email exchanges between Morton, the Disciplinary Administrator, Morton's former Boys & Girls Club supervisor, and the Boys & Girls Club's attorney. Morton vaguely asserts that the content of these exchanges conflicts with the supervisor's testimony at the panel hearing. But she does not explain how her argument implicates due process. Nor does she explain the alleged inconsistencies or how the exhibits are material or probative.

These failings preclude meaningful review of Morton's due process claims.

III. *Clear and Convincing Evidence Supports Only Some of the KRPC Violations Found by the Hearing Panel*

In a disciplinary proceeding, we consider the evidence, the hearing panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, what discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. at 147; see Rule 226(a)(1)(A) (2023 Kan. S. Ct. R. at 281). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'" 315 Kan. at 147. "'In making this determination, the court does not weigh conflicting evidence, assess witness credibility, or redetermine questions of fact. If a disputed finding is supported by clear and convincing evidence, it will not be disturbed.'" *In re Ayesh*, 313 Kan. 441, 464, 485 P.3d 1155 (2021).

In its final hearing report, the panel determined that Morton had violated KRPC 7.1(a) (communication concerning a lawyer's services), KRPC 8.1 (bar admission and disciplinary matters), KRPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and KRPC 8.4(g) (conduct that adversely reflects on the lawyer's fitness to practice law). Morton denies violating any rule. The Disciplinary Administrator contends that clear and convincing evidence supports each rule violation. But it concedes that the panel erred by applying KRPC 8.4(c) and (g) to conduct occurring before Morton was licensed in Kansas. We address each rule in turn.

A. *Clear and Convincing Evidence Does Not Support the Panel's Conclusion That Morton Violated KRPC 7.1 by Posting Certain Content on Her Professional Website*

Under KRPC 7.1, a lawyer "shall not make a false or misleading communication about the lawyer or the lawyer's services." (2023 Kan. S. Ct. R. at 423). A communication is "false or misleading" if it "contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading." KRPC 7.1(a) (2023 Kan. S. Ct. R. at 423). The panel concluded that Morton violated KRPC 7.1 by publishing "a website containing materially false information, including masses of information copied from the Roth Davies website, . . . her bar association memberships, her alleged Martindale-Hubbell A/V rating, and her alleged experience, particularly in motorcycle and wrongful death cases." In the panel's view, Morton had intentionally represented material facts, and her rule violations were exacerbated when, "having removed the website upon receipt of the complaint in this matter, she put the offending website back up within a few months."

More context is required before evaluating the panel's findings. The record reveals that the Disciplinary Administrator first took issue with the November 2020 version of Morton's website—Davies had attached screenshots of the page to his complaint, and the

24

Disciplinary Administrator introduced them as evidence at the panel hearing. The November 2020 website included a logo for a Martindale-Hubbell A/V rating, the Roth Davies material, the bar association logos, and statements about Morton's experience and practice areas. At that time, the Disciplinary Administrator raised concerns only about the Roth Davies' material and the Martindale-Hubbell logo. When Morton received the complaint, she promptly deactivated her website.

In July 2021, the Disciplinary Administrator conducted a follow-up investigation and found that Morton had reactivated her website. It was only then that the office began to object to the other aspects of Morton's website. And, importantly, the July 2021 version had addressed the Administrator's earlier concerns: Morton had deleted the Martindale-Hubbell A/V rating logo and the Roth Davies material (a fact that belies the panel's conclusion that Morton "exacerbated" the violations by reactivating her website).

Given that context, it is useful to separate our discussion of KRPC 7.1 violations into two categories. We first examine the November 2020 website and determine whether clear and convincing evidence supports the panel's finding that the website contained "intentional misrepresentations" related to the Martindale-Hubbell logo and the Roth Davies material and, if so, whether such findings support a KRPC 7.1 violation. Then we ask the same questions for the July 2021 website containing Morton's bar membership, her experience, and her practice areas.

    1.   *Clear and Convincing Evidence Does Not Support the Panel's Conclusion That the Content of Morton's November 2020 Website Violated KRPC 7.1*

Clear and convincing evidence does not support the panel's finding that the use of the Martindale-Hubbell A/V Preeminent was an "intentional misrepresentation." There is no dispute that Morton had not received that rating. But the record shows only that the

logo was on the website for some time until a complaint was filed, that Morton promptly removed it, and that she did not republish it on her July 2021 website. The Disciplinary Administrator argues that we should infer that Morton knowingly violated the rule simply because she controlled the contents of her website. But we cannot agree. No evidence suggests that Morton's use of the logo was intentional, as the panel found, rather than inadvertent or negligent. And the Disciplinary Administrator has not argued that lawyers are strictly liable for a KRPC 7.1 violation or that a lawyer may violate the rule by way of ordinary negligence. We therefore reject the panel's conclusion.

Nor do we agree that Morton's use of the Roth Davies material violated KRPC 7.1. That rule prohibits a lawyer only from making "a false or misleading communication *about the lawyer or the lawyer's services*." (Emphasis added.) (2023 Kan. S. Ct. R. at 423). But Morton's inclusion of the Roth Davies material—whether inadvertent or intentional—was not a communication about Morton or her services. Instead, it consisted of summaries of Kansas and federal caselaw, a question-and-answer section about Kansas domestic-violence law, and an explanation of the criminal-trial process. Perhaps Morton's use of the materials violates a different rule of professional conduct (a possibility we address, in part, below), but KRPC 7.1 is simply inapplicable under these facts. We therefore conclude that the November 2020 version of Morton's website fails to support any KRPC 7.1 violations.

2. *Clear and Convincing Evidence Does Not Support the Panel's Conclusion That the Content of Morton's July 2021 Website Violated KRPC 7.1*

Morton's July 2021 website is the basis for the remaining violations. Because the panel's final hearing report lacks important details, additional context is again needed. Under the heading titled, "Associations," Morton included the logo of the Johnson County Bar Association, Kansas Bar Association, and American Bar Association. Her

website also used the word "experienced" several times:  it said that "you need an experienced Johnson County, Kansas attorney;" that "Attorney T. Morton has the experience necessary to determine if you are being treated fairly;" that "experience counts;" and that Morton was "experienced legal counsel you can trust." Finally, Morton listed her practice areas as "criminal defense" and "personal injury," and she listed several types of cases within those areas:  "sex crimes, child pornography/sexual exploitation, Jessica's law" and "auto accident, motorcycle accidents, wrongful death, serious injuries." The panel found that these communications were intentional misrepresentations about her bar membership, her experience, and her practice.

We disagree with the panel. First, a misrepresentation must be "material" to be false or misleading under KRPC 7.1(a). (2023 Kan. S. Ct. R. at 423). Although Morton's membership in each of the bar associations had lapsed, she had been affiliated with each previously, and her website did not expressly say that she was a current member. So the evidence does not clearly and convincingly establish that any misrepresentation of fact was "material." Second, while an attorney's assertion of "experience" may be a material misrepresentation in some cases, that is not the case here. Morton's claims to be "experienced legal counsel" and to "ha[ve] the experience necessary to determine if you are being treated fairly" are not demonstrably false under the record before us. Finally, it is not improper for an attorney to state the areas he or she is willing to practice in or to state the types of cases he or she will accept. Indeed, KRPC 7.4(a) specifically allows a lawyer to "communicate the fact that the lawyer does or does not practice in particular fields of law." (2023 Kan. S. Ct. R. at 429). Nothing in the record shows that Morton claimed to be a specialist in a particular field of law, or that she claimed to have experience handling particular types of cases. She simply listed types of cases she would accept. Thus, clear and convincing evidence does not support the panel's conclusion that the July 2021 website violated KRPC 7.1.

27

B. *Clear and Convincing Evidence Supports the Panel's Conclusion That Morton Violated KRPC 8.1 by Omitting Material Employment Information on Her 2016 Kansas and 2019 Colorado Bar Applications and by Failing to Disclose to Colorado Attorney-Admissions Authorities That She Was Facing a Disciplinary Complaint in Kansas*

KRPC 8.1 prohibits "[a]n applicant for admission to the bar, or a lawyer in connection with a bar admission application" from "knowingly mak[ing] a false statement of material fact" or "fail[ing] to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority." (2023 Kan. S. Ct. R. at 431). The panel concluded that Morton had violated that rule when she (1) "intentionally failed to include her employment with the Boys and Girls Club, as well as her employment with Crystal Specialties and Colorado State University-Pueblo" in her Kansas bar application; (2) stated in "her several applications" to the Colorado bar that she had "voluntarily quit her employment with Boys & Girls Club" and "had not been a member of any bar associations"; and (3) had failed to disclose this disciplinary case to the Colorado attorney-admissions authorities. We address these violations in order, noting that neither the panel nor the parties have addressed how each alleged violation fits into each subsection of KRPC 8.1.

First, we mostly agree with the panel's conclusion about Morton's failure to disclose prior employment on her Kansas bar application. Question 22 of the Kansas bar application required Morton to disclose 10 years of employment history. Morton filed her application in March 2016, meaning that she needed to disclose all employment dating back to March 2006. Morton was an employee of the Boys & Girls Club in late 2007, so she needed to disclose that employment. That omission was material because Morton's supervisor testified that she was fired for misconduct, and "employment misconduct" is one of the factors considered when establishing character and fitness qualification for the Kansas bar. Supreme Court Rule 712(d)(3) (2023 Kan. S. Ct. R. at 574). And because

28

Morton had listed her Boys & Girls Club employment on her earlier Colorado bar applications, it is reasonable to infer that she intentionally omitted it from her Kansas application. Even so, we disagree that there is evidence in the record suggesting that Morton's failure to disclose her employment with Crystal Specialties or Colorado State University-Pueblo was material, so those omissions do not support the violation.

Second, the panel relied on statements from Morton's "several" Colorado bar applications, but it should have relied only on Morton's 2019 Colorado bar application. KRPC 8.1 applies to a Kansas "lawyer" or "[a]n applicant for admission" to the Kansas bar, and Morton was neither before 2016. (2023 Kan. S. Ct. R. at 431). But we agree that clear and convincing evidence supports the panel's conclusion that Morton's statement on her 2019 Colorado application that she voluntarily quit her Boys & Girls Club position was a false statement of material fact. Based on her supervisor's testimony, clear and convincing evidence supports the panel's finding that the Boys & Girls Club terminated Morton for misconduct, meaning that Morton misrepresented the resolution of her employment relationship. And because misconduct in employment is one of the factors considered when establishing character and fitness qualification for the Colorado bar, it is reasonable to infer that Morton intended to cover up the grounds for her termination. See Colorado Court Rules, C.R.C.P. 208.1(6)(c) (2023).

However, we disagree with the panel that Morton's statement about her prior bar membership supports a violation of KRPC 8.1. True, although Morton stated on her 2019 Colorado bar application that she had not been a member of any bar associations, Morton had been a member of the Johnson County Bar Association and the Kansas Bar Association from 2016 to 2017 and of the American Bar Association from 2013 to 2018. But nothing in the record suggests that Morton's statement was material to her bar application. And she was not a member of those associations at the time her application was submitted to Colorado authorities.

29

Finally, we agree with the panel that Morton violated KRPC 8.1 by failing to disclose her Kansas disciplinary complaint to the Colorado attorney-admissions authorities while her 2019 Colorado bar application was pending. That application asked if the applicant was the subject of any complaints or disciplinary or grievance actions. Morton answered no, which was accurate when she submitted the application in June 2019. But when she submitted the application, Morton acknowledged that she had a continuing obligation to timely update the information on the application until she was admitted to practice in Colorado. And she acknowledged that an amendment was considered timely when made "no later than 10 days after any occurrence that would change, or render incomplete, any answer on" her application. As a result, when Morton learned of the pending Kansas complaint against her in February 2021, she needed to timely update her Colorado bar application, which was still pending. Her failure to do so was a material omission.

C. *Clear and Convincing Evidence Supports Some Violations of KRPC 8.4(c) and (g), but the Panel's Findings Concerning Conduct Occurring Before Morton Was Licensed in Kansas Do Not Support a Violation of KRPC 8.4*

KRPC 8.4 defines professional misconduct. Under KRPC 8.4(c), it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." (2023 Kan. S. Ct. R. at 433). And under KRPC 8.4(g), it is professional misconduct for a lawyer to "engage in . . . conduct that adversely reflects on the lawyer's fitness to practice law." (2023 Kan. S. Ct. R. at 433). The panel concluded that Morton had violated these provisions in numerous ways. And it relied on the same findings to support violations of both subsections of KRPC 8.4.

But there is a problem with many of the panel's conclusions. KRPC 8.4 expressly applies only to "a lawyer," and much of the conduct the panel relied on concerns Morton's Kansas bar application, meaning it occurred before Morton was admitted to the bar. As the Disciplinary Administrator concedes, KRPC 8.4 does not apply to that

conduct. Thus, Morton's failure to disclose facts on her Kansas bar application about her employment at the Boys & Girls Club, Crystal Specialties, and Colorado State University-Pueblo cannot support a violation of KRPC 8.4.

Several of the remaining violations involve the statements or omissions on her Colorado bar application that we discussed above. Although the panel did not specify whether it found violations based on Morton's earlier Colorado bar applications, KRPC 8.4 applies only to statements or omissions made on Morton's 2019 Colorado application, since she was not a lawyer when she submitted the earlier applications.

We agree with the panel that clear and convincing evidence supports a KRPC 8.4 violation for Morton's statement that she "voluntarily" quit her employment with the Boys & Girls Club. Her supervisor's testimony clearly and convincingly supports the panel's finding that Morton was fired for misconduct. Morton's statement involves a material misrepresentation and adversely reflects on her fitness to practice law. We also agree that clear and convincing evidence supports a KRPC 8.4 violation for Morton's failure to disclose her Kansas disciplinary complaint to Colorado attorney-admissions authorities while her Colorado bar application remained pending. The record shows that Morton acknowledged that she had a continuing obligation to update the information on the application until she was admitted to practice in Colorado. Her failure to disclose the complaint is a material misrepresentation or deceitful, and it adversely reflects on her fitness to practice law.

But we disagree with the panel that other statements and omissions in her 2019 Colorado bar application support KRPC 8.4 violations. We have already discussed Morton's statement that she had not been a member of any bar associations. The record contains no evidence suggesting that Morton's statement was material to her bar application, so clear and convincing evidence does not support a conclusion that she made a material misrepresentation or that her statement adversely reflects on her fitness

31

to practice law. Nor do we believe clear and convincing evidence supports the panel's conclusion that Morton violated KRPC 8.4(c) and (g) because she "[f]ailed to disclose to the Colorado bar that she had been employed by El Pueblo." To the contrary, the first item listed in the employment-history section of Morton's 2019 Colorado application was her position as principal at El Pueblo.

Finally, the panel relied on the contents of Morton's website to conclude that Morton had engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation under KRPC 8.4(c) and in conduct that adversely reflected on her fitness to practice law under KRPC 8.4(g). We have already addressed most of the content on Morton's website. We determined that there was no clear and convincing evidence showing that Morton's use of the Martindale-Hubbell A/V Preeminent was anything other than inadvertent or, at most, negligent. We also determined that Morton's use of the three bar-association logos was not a material misrepresentation, that her use of "experienced" was not demonstrably false, and that listing case types and practice areas was unobjectionable under the facts here. Because the record shows that any misrepresentations related to this content were either immaterial or (at most) negligent, we do not believe clear and convincing evidence shows that Morton engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation under KRPC 8.4(c). See *In re Pyle*, 283 Kan. 807, 827, 156 P.3d 1231 (2007) (clear and convincing evidence did not support KRPC 8.4[c] violation when incorrect statement reflected "mistake rather than malevolence"); see also Black's Law Dictionary 1198 (11th ed. 2019) (defining "misrepresentation" as the "act . . . of making a false or misleading assertion about something, *usu. with the intent to deceive*" [emphasis added]). And for that same reason, we also conclude Morton did not engage in conduct that adversely reflects on her fitness to practice law under KRPC 8.4(g).

But we have not yet discussed Morton's use of the Roth Davies material because we concluded that such content did not represent a communication about Morton or her services under KRPC 7.1. KRPC 8.4 contains no such limitation, so we agree with the

panel that it may sometimes apply when a lawyer misappropriates materials for a professional website. But the record before us contains no evidence showing that Morton's use of the Roth Davies material was anything more than inadvertent or negligent. Thus, we "discern mistake rather than malevolence," and cannot agree that clear and convincing evidence establishes that Morton engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation under KRPC 8.4(c) or that adversely reflects on her fitness to practice law under KRPC 8.4(g). *In re Pyle*, 283 Kan. at 827.

IV. *The Appropriate Discipline Is Published Censure*

We have evaluated the hearing panel's conclusions on Morton's rule violations. We determined that Morton violated KRPC 8.1 by failing to disclose her Boys & Girls Club employment on her Kansas bar application, by materially misrepresenting the termination of her Boys & Girls Club employment on her 2019 Colorado bar application, and by failing to inform the Colorado attorney-admissions authorities of a pending Kansas disciplinary complaint. We determined that this same conduct violated KRPC 8.4(c) and (g). But we rejected many of the rule violations the panel found, including all violations of KRPC 7.1 and KRPC 8.4 that arose from the content of Morton's website, violations of KRPC 8.1 and KRPC 8.4 that arose from immaterial omissions of employment and bar-membership history, and all violations of KRPC 8.4 that arose from conduct before Morton had been admitted to the bar.

The remaining question is the appropriate discipline. We generally look to the American Bar Association Standards for Imposing Lawyer Sanctions to aid in determining discipline. That framework considers "four factors in determining punishment:  (1) the ethical duty violated by the lawyer; (2) the lawyer's mental state; (3) the actual or potential injury resulting from the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors." *In re Hodge*, 307 Kan. at 231.

33

The panel considered these same factors. It determined that Morton had violated the KRPC in numerous ways. It found that Morton's violations were intentional and had "caused injury and harm to the justice system and the practice of law" in Kansas. The panel also found that Morton's misconduct was aggravated by a dishonest or selfish motive, by her commission of multiple offenses, and by her refusal to acknowledge the wrongful nature of her conduct. But it did find that her misconduct was mitigated by a lack of prior disciplinary record and by her inexperience in the practice of law. Based on these considerations, the panel recommended an indefinite suspension with various conditions for reinstatement. The Disciplinary Administrator recommends we disbar Morton from the practice of law. Morton recommends either censure or probation.

While we agree with the panel that Morton engaged in intentional rule violations, we have concluded that clear and convincing evidence supports only a few of the rule violations the panel found. The record also lacks evidence of concrete or specific harm, and the Disciplinary Administrator has never alleged that Morton injured a client. And we question the weight the panel assigned some of the aggravating factors. We agree that Morton at times acted with a dishonest motive. And while we also agree that Morton committed multiple violations, that aggravating factor warrants much less weight since we determined that most of the violations involving misrepresentations are not supported by clear and convincing evidence. Moreover, in our view, the panel's finding that Morton had refused to acknowledge the wrongful nature of her conduct is not supported by clear and convincing evidence. The panel failed to identify specific instances of Morton's failure to take responsibility, and the finding threatens to punish Morton for exercising her rights in an adversarial proceeding. The record shows that Morton promptly addressed the Disciplinary Administrator's objections to her website, and at oral argument, Morton acknowledged mistakes and evinced a commitment to future compliance. On the other hand, we agree with the mitigating circumstances the panel found.

"In any given case, this court is not bound by the recommendations from the hearing panel or the Disciplinary Administrator. 'Each disciplinary sanction is based on the specific facts and circumstances of the violations and the aggravating and mitigating circumstances presented in the case.' 'Because each case is unique, past sanctions provide little guidance.' [Citations omitted.]" *In re Hodge*, 307 Kan. at 230. Having considered the facts here, a majority of this court holds that published censure is the appropriate discipline. We base this determination on ABA Standards 5.13 (reprimand generally appropriate when lawyer knowingly engages in conduct that involves dishonesty, fraud, deceit, or misrepresentation that causes injury or potential injury). See *In re Spencer*, 317 Kan. 70, 86, 524 P.3d 57 (2023) (published censure appropriate sanction for lawyer who committed "a misdemeanor that involved dishonesty, fraud, deceit, or misrepresentation which adversely reflected on his fitness to practice law but did not seriously adversely reflect on his fitness to practice law"). A minority of the court would impose more severe discipline.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Tarishawn D.D. Morton is disciplined by published censure to be published in accordance with Supreme Court Rule 225(a)(5) (2023 Kan. S. Ct. R. at 281) for violating KRPC 8.1, 8.4(c) and (g).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.