IN THE SUPREME COURT OF THE STATE OF KANSAS

CCR No. 1721

In the Matter of MEGHAN ROGERS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held November 2, 2023. Opinion filed February 23, 2024. Public reprimand.

*Todd N. Thompson*, appointed disciplinary counsel for the State Board of Examiners of Court Reporters, argued the cause and was on the brief for the petitioner.

*Bryan W. Smith*, of Smith Law Firm, of Topeka, argued the cause, and *Christine Caplinger*, of the same firm, was with him on the brief for the respondent.

PER CURIAM:  This is an original proceeding in discipline filed by the State Board of Examiners of Court Reporters, in its disciplinary capacity, against the respondent, Meghan Rogers, a certified court reporter.

On July 11, 2021, appointed disciplinary counsel for the Board filed a formal complaint and notice of hearing against respondent, alleging she failed to timely file an expedited transcript with the Court of Appeals and failed to meet completion dates. It was asserted the nature of these failures violated the provisions of Rules Adopted by the State Board of Examiners of Court Reporters, Supreme Court Rule 367 (2023 Kan. S. Ct. R. at 464), as follows:

- Board Rule No. 9.F.2 (2023 Kan. S. Ct. R. at 468)—Professional incompetency;

- Board Rule No. 9.F.3—Knowingly making misleading, deceptive, untrue, or fraudulent representations as a court reporter;
- Board Rule No. 9.F.6—Fraud in representations relating to skill or ability as a court reporter; and
- Board Rule No. 9.F.11—Refusal to cooperate in an investigation conducted by the Board or obstructing such investigation.

(For clarity, we will refer to the Board in its disciplinary capacity as "Prosecutor"; and the Board in its judicial capacity as "Board.")

Respondent was served with the formal complaint and notice of hearing on July 14, 2021, and responded to the complaint's allegations on August 3, 2021. Respondent was given timely notice of the formal hearing before the Board.

On January 31, 2022, this matter was heard by the Board, and respondent was present at the hearing, where she was self-represented. After presentation of testimony and other evidence, the Board took the matter under advisement.

On April 11, 2023, the Board issued its written findings of fact, conclusions, and recommendation concerning discipline:

> "BOARD FINDINGS, CONCLUSIONS, AND RECOMMENDATION
> CONCERNING DISCIPLINE
>
> . . . .
>
> "1. On May 4, 2020 the initial request for transcript was filed in Case No. 16JC331 in Shawnee County.
>
> "2. On May 11, 2020, the Court entered an Order expediting the case.

2

"3.	On June 10, 2020, Respondent filed a Motion for Extension of Time to complete and file the transcript, alleging it was 40% completed but not finished: 'Due to current pandemic lack of access to files.  I have returned to the office setting and will continue to expedite the matter now that I have access to the files needed to complete the requested hearing.'

"4.	On June 18, 2020 the Motion was granted, but Respondent was advised there would be no further extensions absent exceptional circumstances and was directed to produce the transcripts on or before July 10, 2020.

"5.	On July 9, 2020, Respondent filed a Motion for Additional Extension of Time to complete and file the transcript, alleging it was 60% completed but not finished:  'Due to several requests upon returning from administrative leave.'

"6.	On July 20, 2020, the Motion was granted, but Respondent was advised there would be no further extensions absent exceptional circumstances and was directed to produce the transcripts on or before August 19, 2020.

"7.	On August 19, 2020 Respondent filed Motion for Extension of Time seeking a 14-day extension of time to complete and file the transcript, alleging it was 60% completed but 14 additional days were needed:  'To finalize edits.'

"8.	On August 20, 2020, the Motion was granted, but it was ordered that there would be no further extensions.

"9.	Respondent was granted an extension to September 2, 2020.

"10.	On September 8, 2020 Respondent filed a Motion for Extension of time to complete and file the transcript, seeking an additional 20 days, alleging it was 85% completed but 20 additional days were needed:  'Due to personal circumstances.'

"11.	On September 9, 2020, the Motion was granted, and Respondent was again advised there would be no further extensions.

"12.    Respondent was granted an extension to September 22, 2020.

"13.    On September 28, 2020, Respondent filed an out-of-time Motion for Extension of time to complete and file the transcript, alleging it was 85% completed but 30 additional days were needed because:  'Personal circumstances related to the pandemic and transferring of districts.'

"14.    On October 8, 2020 the Motion was granted, and Respondent was again advised there would be no further extensions.

"15.    Respondent was granted an extension to October 22, 2020.

"16.    On October 15, 2020, a complaint was filed with the Board of Examiners of Court Reporters against the Respondent.

"17.    On December 28, 2020, the Board notified Respondent of the complaint submitted against her.  The Office of Judicial Administration did not receive an answer to the initial request for information although Respondent stated during the hearing that she sent a response via regular mail.

"18. Respondent delivered the completed transcript on February 5, 2021.

"CONCLUSIONS

"Respondent does not contest the facts contained in the Notice of Hearing. Respondent failed to present any evidence justifying the delay in transcript production or mitigating the circumstances which led to the delay.  The Board finds by clear and convincing evidence that Respondent violated Supreme Court Rule 367, Nos. 9.F.2, professional incompetency.

"RECOMMENDATIONS

"The Board recommends that Respondent be suspended for a period of six months."

4

On July 5, 2023, respondent filed a brief with this court, purportedly taking exception to the Board's findings of fact by asserting the Board had omitted seven uncontested facts. But respondent did not take exception to the findings of fact the Board made. Respondent also took exception to the Board's conclusion that clear and convincing evidence showed respondent had committed a Board rule violation. Finally, respondent argued the case should be dismissed for failure to prove a violation or, if violation was found, that mitigating factors would support admonishment rather than the more severe sanction of a suspension recommended by the Board.

Prosecutor filed a responsive brief on September 5, 2023. He takes exception to respondent's proposed additional facts. Prosecutor also asserts facts number 16 through 21 that are slightly different than, or in addition to, findings of fact found by the Board. As for the conclusions to be drawn from the facts, Prosecutor urges this court not only to find a violation of Board Rule No. 9.F.2. (professional incompetency) but also violation of Board Rule No. 9.F.3 (knowingly making misleading, deceptive, untrue, or fraudulent representations as a court reporter). Finally, Prosecutor urges this court either to adopt the Board's recommendation of a six-month suspension or add two months, making it an eight-month suspension.

During oral arguments before this court, the parties again argued what they believed the evidence established, conclusions to be drawn from the evidence, and what punishment, if any, ought to be imposed.

DISCUSSION

In court reporter discipline cases, "[t]he Board may, based upon clear and convincing evidence," impose certain discipline or recommend discipline for the

5

Supreme Court to impose. Rule 367, Board Rule No. 9.E. of the Rules Adopted by the State Board of Examiners of Court Reporters. So we must first determine whether the Board's Findings of Fact are supported by clear and convincing evidence.

> "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."' ""In making this determination, the court does not weigh conflicting evidence, assess witness credibility, or redetermine questions of fact. If a disputed finding is supported by clear and convincing evidence, it will not be disturbed."' [Citations omitted.]" *In re Morton*, 317 Kan. 724, 740, 538 P.3d 1073 (2023).

In our independent review of the record, and because the parties do not contest them, we find the Board's findings of fact are supported by clear and convincing evidence. We also find that the parties' proposed additional facts are either redundant, immaterial, argumentative, or are not established by clear and convincing evidence, so they will not be considered.

As in any disciplinary proceeding, once we have ascertained the evidence sufficiently proved, we will consider that evidence, along with the parties' arguments to determine whether the rules applicable to court reporters were violated and, if so, what discipline to impose. See *Morton*, 317 Kan. at 740 (concerning attorney discipline). Thus, we next turn to the Board's conclusion that respondent committed the violation of professional incompetency. The Board rules do not define "professional incompetency." The dictionary defines "incompetent" as: (1) "lacking the qualities needed for effective action"; (2) "unable to function properly"; (3) "not legally qualified"; or (4) "inadequate to or unsuitable for a particular purpose." "Incompetent." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/incompetent. Because this definition does not reveal the specific parameters of *professional* incompetency, however, we look elsewhere for guidance. For instance, K.S.A. 65-2837(a) defines "professional incompetency" for physicians this way:

6

"(1) One or more instances involving failure to adhere to the applicable standard of care to a degree that constitutes gross negligence, as determined by the board.

"(2) Repeated instances involving failure to adhere to the applicable standard of care to a degree that constitutes ordinary negligence, as determined by the board.

"(3) A pattern of practice or other behavior that demonstrates a manifest incapacity or incompetence to practice the healing arts."

For nurses, K.S.A. 2022 Supp. 65-1120(e) defines "professional incompetency" as:

"(1) One or more instances involving failure to adhere to the applicable standard of care to a degree which constitutes gross negligence, as determined by the board;

"(2) repeated instances involving failure to adhere to the applicable standard of care to a degree which constitutes ordinary negligence, as determined by the board; or

"(3) a pattern of practice or other behavior which demonstrates a manifest incapacity or incompetence to practice nursing."

The Kansas Rules of Professional Conduct (KRPC) require a Kansas attorney to be competent in his representation, stating:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." KRPC 1.1 (2023 Kan. S. Ct. R. at 327).

7

We use these definitions by analogy in the context of this case. Respondent is a certified court reporter. The record reflects no prior discipline, so respondent's professional competence, or lack of it, is judged only by this record.

That record shows that the district court ordered a transcript on May 4, 2020, then expedited it on May 11, 2020. Respondent was the court reporter for the hearing, and thus was responsible for preparing and delivering the transcript for filing. Respondent did not deliver the completed transcript until February 5, 2021—some nine months later. In the meantime, she filed five Motions for Extension of Time to complete this transcript. While all five motions were granted, one of the motions was not filed until the previous deadline had expired. The last extension expired October 22, 2020, so the transcript was officially delinquent for more than three months.

The Prosecutor challenges respondent's reasons for her requests for extension of time to comply with the request for transcript. Since the court reviewing her requests found those reasons adequate, we decline to review the sufficiency of those reasons vis-à-vis the appropriateness of respondent's deadline extensions.

The Prosecutor urges us to find two violations: first, professional incompetency under Board Rule No. 9.F.2.; and second, that respondent knowingly made misleading, deceptive, or untrue representations as a court reporter under Board Rule No. 9.F.3. He argues the reasons respondent gave for extensions of time to submit the transcript were untruthful. But, although respondent was formally accused of knowingly making misleading, deceptive, untrue, or fraudulent representations, she presented testimony to refute those accusations. After reviewing all the evidence presented, the Board did not make a finding that respondent was untruthful. We agree there is not clear and convincing evidence to show the respondent was untruthful or that she violated Board Rule No. 9.F.3.

8

The Prosecutor argues the delay was significant and harmful and that respondent's excuses were suspect. He asserts her conduct was not efficient, lacked necessary skill, and showed she was not capable of producing the transcript in compliance with court orders, all of which demonstrates professional incompetency.

Respondent counters that one late transcript does not demonstrate professional incompetency. There is no allegation that the transcript itself was insufficient, and she avoided having to show cause why she should not be held in contempt of court. Besides, a litigant does not have the right to a transcript, the failure to make a record is not automatically reversible error, and there are probably backup files in the office of the clerk.

But none of these arguments help respondent much. It was her job to produce an official transcript and to do it timely. We have previously held that "repeated failure to timely respond to discovery requests, court orders, and dispositive motions is clear evidence of incompetence." *In re Dennis,* 286 Kan. 708, 727, 188 P.3d 1 (2008). Here, although respondent successfully requested five extensions of time to deliver the transcript, those extensions expired on October 22, 2020. Respondent knew how to request more time, but she did not. So the now delinquent transcript was delivered 106 days after respondent's last extension expired.

Court reporters serve a valuable role in our judicial system. "Unlike the executive or the legislature, the judiciary 'has no influence over either the sword or the purse; . . . neither force nor will but merely judgment.' The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions. [Citation omitted.]" *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 445, 135 S. Ct. 1656, 191 L. Ed. 2d 570 (2015). "Court reporters employed by the district courts are officers of the court.

Supreme Court Rule 352 (2019 Kan. S. Ct. R. 412)." *In re Shepard*, 310 Kan. 1017, 1023, 453 P.3d 288 (2019). As such, court reporters have an ongoing duty to meet and satisfy their duties competently.

A majority of this court concludes respondent's actions and failures to act constituted professional incompetency. A minority of the court disagrees and concludes the respondent's actions here, while concerning, do not rise to the level of incompetency.

The only remaining issue before us is the appropriate discipline for the respondent's violation. For attorney discipline, we receive guidance from the American Bar Association Standards for Imposing Lawyer Sanctions to help us determine appropriate discipline. That framework considers "four factors in determining punishment:  (1) the ethical duty violated by the lawyer; (2) the lawyer's mental state; (3) the actual or potential injury resulting from the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors." *In re Hodge*, 307 Kan. 170, 231, 407 P.3d 613 (2017).

While court reporter discipline has no counterpart to the ABA Standards for lawyers, we are similarly guided by their commonsense approach. Here, the ethical duty violated by respondent was the single violation of professional incompetency.

Respondent's mental state was not at issue. As to injury, actual injury from respondent's violation was alleged in an exhibit admitted at the formal hearing. This initial complaint against respondent states:  "The children in question have been in care for more than 4 years and they cannot have permanency in an adoptive family until the parental rights termination appeal is settled . . . ." Though no further evidence of injury was presented, and the Board made no findings in that regard, the delay of a transcript in this context has the potential for injury in the children's quest for family stability.

Finally, we address the existence of any aggravating or mitigating factors. Here, the Board found no evidence of mitigating circumstances. We disagree. In her Response to the Prosecutor's Formal Complaint, which was admitted as an exhibit during the formal hearing, respondent stated:

> "During the pandemic I was and have been responsible for the care of an elderly grandfather, teacher of three children in remote learning classes along with other personal matters that were contributing factors. . . . I also had transferred districts during a time that was very difficult to receive communications. . . .

> "Additionally, I would like to provide you with more information regarding this past year. I am currently on extended leave due to medical issues that have been ongoing and will be on leave for several weeks to come. . . . We have been in quarantine a few times and had several positive cases within our household. I had a computer crash during the pandemic which led to several delays . . . ."

Representing herself without benefit of counsel, respondent testified that some hardships she mentioned in her Response occurred before, and some after, delivery of the completed transcript. But her computer crash and delay of replacement parts, difficulty transferring records from Shawnee County District Court (where the record was taken) to Douglas County District Court (where she continued to work during transcript preparation), health issues, and childcare responsibilities all contributed to delays in completing the transcript. These are all considered to be mitigating circumstances.

The Board may recommend the following discipline to the Kansas Supreme Court: (1) public reprimand; (2) imposition of a period of probation with special conditions which may include additional professional education or re-education; (3) suspension of the certificate; or (4) revocation of the certificate. Board Rule, No. 9.E.4 (2023 Kan. S. Ct. R. at 467). Here, the Board recommends a six-month suspension of respondent's

certificate. The prosecutor recommends either a six-month or eight-month suspension. Respondent recommends we issue a public reprimand if violation is found.

Having considered all matters raised, we find that appropriate discipline is a public reprimand.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Meghan Rogers be and is disciplined by public reprimand in accordance with Rule 367, Board Rule No. 9.E.4. of the Rules Adopted by the State Board of Examiners of Court Reporters.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports.